Henry Trowbridge et al., as Trustees, etc., Appellants, *v.* John Horan et al., Respondents.

Under the provisions of the charter of Long Island City, of 1871, in relation to assessments (§ 6, tit. 6, chap. 461, Laws of 1871), giving to the assessors the power, and subjecting them to the duties, of the assessors of towns, except as therein provided, all lands in said city, save unoccupied, non-resident lands, must be assessed to the owner or occcupant.   (1 R. S., 389, §§ 1, 2.)

Where lands are owned by a person as trustee, they must be assessed to him, " with the addition to his name of his representative character."

It is irregular and unauthorized to make an assessment to an estate.

Certain lands in said city, the title to which had formerly been in B., then deceased, were assessed in bulk to B.'s estate in 1873.   One-half of the land lying separate from the remainder was claimed by plaintiffs, who were trustees under the will of B., to have been taken for a park.   Plaintiffs tendered the amount of the tax on such remainder to the receiver of taxes, which was declined, on the ground that he had no power to apportion the taxes. Under the act of 1876 (chap. 402, Laws of 1876), in relation to unpaid taxes in said city, which authorizes the assessors to amend the assessment-rolls for 1873, by redescribing the property, dividing it into lots, etc., the assessors made a new assessment-roll, dividing that portion of the lands upon which plaintiffs had offered to pay the tax into blocks and lots, the tax being carried out at the amount so tendered.   This plaintiffs again offered to pay, but it was refused, unless plaintiffs would also pay certain percentages claimed to have accrued upon non-payment of the prior tax, with interest on the amount of the prior tax; and the receiver proceeded to advertise the property.   This action was brought to restrain the sale and to compel the receiver to release the property upon payment of the tax; it did not appear that the portion of the land known as the "park property" was assessed in the amended assessment-roll.   *Held*, that the assessment of 1873 was invalid, as the lands were not assessed to plaintiffs as trustees; that plaintiffs were not liable for percentages accruing previous to the new assessment; and that the action was maintainable.

An intention cannot be imputed to the Legislature to visit penalties upon the citizen for not paying the tax upon an assessment which it assumes was irregular, which it has authorized to be corrected, which has been corrected, and, as corrected, has been complied with.

*seems*, that the receiver of taxes of said city has, under its charter, the same power as town collectors to receive a tax on a part of a lot (1 R. S., 399, § 8) as to State and county taxes, but not as to city taxes.

(Argued September 19, 1879; decided November 11, 1879.)

APPEAL from order of the General Term of the Supreme Court, in the second judicial department, reversing a judgment in favor of plaintiff, entered upon the report of a referee.

This action was brought by plaintiffs as trustees under the will of Robert M. Blackwell, deceased, to restrain the receiver of taxes of Long Island City from selling, for non-payment of taxes, certain real estate in that city owned by them as trustees, and to compel said receiver to take the tax assessed and to release the lands from the incumbrance.

The facts appear sufficiently in the opinion.

*Frank E. Blackwell*, for appellants.    The act of the assessors in correcting the assessment roll of 1873 was within the scope of their authority and conclusive.    (Laws 1876, chap. 422, §§ 1, 2, 3.)    Plaintiffs were not called upon or authorized to pay upon any property except such as they were trustees of.    (1 R. S. [Edm's ed.], *391, § 10.)    The collector should have received the tax upon the property in question before the re-assessment.    (1 R. S. [Edm's ed.], 399, § 8;  Laws 1823, p. 400, § 25;  Laws 1871, vol. 1, p. 934, § 6;  Laws 1871, vol. 1, p. 937, § 13;  1 R. S. [Edm's ed.], 396, § 37;  Laws 1871, vol. 1, p. 927, § 1;  id., p. 937, § 14;  1 R. S. [Edm's ed.], 396, § 36.)    The only answer defendants will be allowed to make is that made by the collector at the time the tax was tendered.    (*Hull* v. *Peters*, 7 Barb., 331;  *Duffy* v. *O'Donavan*, 46 N. Y., 223;  *Raymond* v. *Bearnard*, 12 J. R., 274;  *Cong. Beth. Elohim* v. *Cent. Presbyt. Church*, 10 Abb. [N. S.], 494;  *Carman* v.

*Pultz,* 21 N. Y., 547.)   A Court of Equity will not lend its
aid to enforce a penalty; especially when the penalty arose
by reason of the act of the party seeking to enforce it.
(Laws of 1876, p. 43, § 9.)

*J. Ralph Burnett,* for respondents.   In executing the
warrant of the board of supervisors the receiver of taxes has
all the powers of town collectors.   (Laws 1871, chap. 461,
§ 14, title 6.)   The system and power of taxation for city
purposes are distinct and independent of that for State and
county purposes.   (*Mayor, etc., of Troy* v. *Mutual Bk.,* 20
N. Y., 387; *Am. Tr. Co.* v. *Buffalo,* 23 Barb., 272;
affirmed by Court of Appeals.)   No legal tender of the
taxes or any part of them was ever made.   (*Rosevelt* v.
*Bull's Head Bank,* 45 Barb., 579; *Wood* v. *Hitchcock,* 20
Wend., 47.)

CHURCH, Ch. J.   The original assessment in 1873, was in
bulk, describing the land by certain streets, and valued in
gross at $45,000.   It appears that the whole quantity assessed
was about thirty acres, one-half of which lying separate from
the remainder was claimed to have been taken for a park,
and the plaintiffs sought to pay the tax upon the remainder
of the property, and tendered the amount to the receiver of
taxes, which was declined upon the ground that he had no
power to apportion the taxes.   In 1876, the Legislature
passed an act entitled "an act relating to unpaid taxes in
Long Island City," (chap. 422, Laws of 1876), authorizing
among other things the assessors of that city to amend the
assessment-rolls for several years, including 1873, in various
respects, and among others to redescribe property, and
divide it into lots, blocks, and plats as they should deem
just.   Under this act the assessors in 1877, made a new
assessment-roll for 1873, and divided that part of the prop-
erty in question upon which the plaintiffs desired to pay the
tax into blocks, and lots, and the tax was carried out at the
amount which the plaintiffs had before tendered, and this

amount they again offered to pay, but was refused unless they would also pay certain penalties, which had accrued upon the non-payment of the prior tax, together with the interest upon the amount of such prior taxes, and the receiver proceeded to advertise the property. This action is brought to restrain a sale of the property. Whether the park property was assessed at all, and if so to whom, in the amended assessment-roll does not appear; if it was not, then by virtue of section three, of the act of 1876, it was "free and clear and forever discharged of and from all taxes of that year, and the lien thereof."

The assessment of 1873 was invalid for the reason, if no other, that it was not made to the owner or occupant of the property. By the charter of Long Island City the assessors have the same powers, and are subject to the same duties as assessors of the towns of the State, except as to non-resident lands. By the Revised Statutes (1 R. S., 389) all lands must be assessed to the owner or occupant, or as non-resident lands. If the owner is the occupant they must be assessed to him. If they are unoccupied, and the owner resides in the town where they are situated they must also be assessed to him. The lands were owned by the plaintiffs as trustees, under the will of one R. M. Blackwell, deceased. The assessment is "Blackwell, R. M., est."

The words "estate of A. B." is not, and cannot be an owner in any sense whatever. The title to real property is always vested in some person or corporation, either absolutely or in trust, and the statute requires the assessment to be made to the owner, and it is irregular and unauthorized to make an assessment to an "estate." No title could be acquired under a sale for taxes by such an assessment. When a person is a trustee, the statute is very specific that he shall be assessed as such with the addition to his name of his representative character. (§ 10.) The statute defines how assessment-rolls are to be made. In the first column the names of all the taxable inhabitants are to be put down; in the second, the quantity, and in the third, the value of the land. These

requirements must be substantially complied with. They constitute a part of the proceedings which may deprive the citizen of his property, and a compliance with them is essential to the validity of such proceedings. The second section of the act of 1876, authorizes the assessors to amend " and reamend " the name of the owner in the assessment-rolls for the years specified, and declares that " no error in the owners name  *  *  *  shall impair or in any way affect the regularity or validity of the assessment or tax."

The owners name was not amended in the corrected assessment of 1877. In both assessments there was an omission to specify any owner, and it is questionable at least whether the curative provision in section two would reach such a case. The action is not based upon this point, nor could an equitable action be maintained upon this ground, for the reason that the defect would appear in any proceeding to recover possession of the premises under a title by a sale for non-payment of taxes, or if not it would be a matter of record. The plaintiffs admit the validity of the corrected assessment of 1877, and are willing to pay the amount of that assessment, and if the assessment is void for the reason stated, it would be for the interest of the city to receive such amount, and the judgment of the referee would be just to all.

But passing that point, the ground upon which the action is sought to be maintained, is, that the plaintiffs are only liable for the taxes upon the blocks and lots which they admit are subject to taxation as assessed in 1877, and which they have offered to pay, and are not liable for interest and percentages previously accruing.

It is necessary to refer again to the act of 1876, which seems to have been designed as a healing balm for all the ills under which Long Island City had been suffering, from irregular and illegal assessments for a series of years. The seventh section requires the new rolls to be delivered to the treasurer, and receiver of taxes, " who shall cause the several taxes then remaining unpaid to be extended against each plot or person, at the same rate per cent on the valuation

thereof as the original tax of the same kind for that year was extended, and thereupon such corrections, with the taxes so extended thereon, shall constitute and be and shall be deemed and taken to be a part of the assessment-roll of that year, in the place and stead of the originals so corrected, with the same force and effect in all respects as if originally constituting a part thereof." The eighth section dispenses with any new warrant, either from the common council or board of supervisors, and declares that "said treasurer and receiver of taxes shall proceed under and by virtue of this act, and without any new further or additional warrant to collect such taxes, and every part thereof together with the interest, the percentages or penalties, the charges of said treasurer and receiver, and all the charges and expenses prescribed by this act, or which shall hereafter become due thereon according to law."

The statute must have a reasonable construction; and we are of opinion that in applying it to the facts of this case, the plaintiffs were required to pay only the amount of the tax upon the lots in question according to the assessment of 1877, and the interest and percentages thereafter accruing. The original assessment was confessedly imperfect, and it included a parcel of land which the plaintiffs claim was not taxable to them, and which was not shown to have been re-taxed at all. Under legislative authority it was corrected, and the new assessment roll substituted, and the plaintiffs are willing to pay according to such substitution. It does not appear that the new assessment roll included the park property, and if it did it was separated from the other property. If the original assessment roll had been like the corrected one, the taxes upon the lots in question could have been paid separately from the taxes on the park property, and the plaintiffs were willing, and offered to pay them. An intention cannot be imputed to the Legislature to visit penalties upon the citizen for not paying the tax upon an assessment which it assumes was irregular, which it has authorized to be corrected, which has been corrected, and as

corrected has been complied with.    This would be to compel the plaintiffs to pay a penalty for the default of the city, and its own officers.    The plaintiffs are not in default as to the substituted tax, and should not be visited with the imposition of penalties, or the payment of interest.

The question whether the receiver of taxes of Long Island City has the power of town collectors to receive a tax on a part of a lot taxed under section 8 (1 R. S., 399) is not essential to determine, in the view taken of the act of 1876. I have however examined that question, and am of opinion that he has such power as to State and county taxes, but as to city taxes the charter seems to provide specifically for the collection of such taxes.    The Revised Statutes apply only to town, county and State taxes, and the charter of Long Island City, while conferring the powers of town collectors upon the receiver of taxes as to such taxes, omits this authority as to city taxes.    (Laws of 1871, § 14.)    It would seem to follow that this power was not conferred.    The only effect of this provision is to impair the technical effect of the tender of city taxes under the assessment of 1873, but it is not material in this case.

We think that the plaintiffs are entitled to be relieved from the interest and penalties which accrued prior to the making of the substituted assessment roll of 1877.

The judgment of the General Term must be reversed, and that entered upon the report of the referee affirmed, with costs.

All concur.

Judgment accordingly.