DAVID CROMWELL, County Treasurer; etc., Respondent, *v.* MARIE H. MACLEAN, Impleaded, etc., Appellant.

*It seems* that, where one is in possession of land, claiming title under a conveyance upon a tax sale, he is not a proper party to an action to foreclose a mortgage upon the land given prior to the sale. His rights are paramount and adverse to the claim of the plaintiff under the mortgage, and may not, therefore, be adjudicated in the action.

Such person, however, when made a party defendant in the foreclosure action, may consent that the question as to the validity of his title be adjudicated therein, in which case the court has the right to pass upon the question.

In an action of foreclosure, the complaint in which contained the usual allegations that defendants have or claim some interest in or lien upon

the premises, but that the same had accrued subsequently to the lien of
the mortgage, one of the defendants answered, putting in issue said
allegation and alleging title in herself by virtue of certain tax sales and
the leases made thereunder, and asked that she might be adjudged the
owner and entitled to certain damages named in the complaint for the
taking of a portion of the premises under the right of eminent domain.
The plaintiff replied, alleging that said leases were void.   On the trial
evidence was offered on the part of the plaintiff, and received without
objection, tending to show that the assessments and proceedings under
which the premises were sold and the leases issued were irregular and
void.   After the plaintiff had rested said defendant moved for a dis-
missal of the complaint as to her on the ground that the validity of her
title could not be passed upon in the action.   *Held,* that the objection
came too late; that, while the court might, on its own motion, have
refused to pass upon the question as to the validity of defendant's title,
yet as she had not only consented, but had incorporated in her pleadings
a positive request that it be passed upon, the court had the right so to
do, and its denial of the motion was not error; and that the judgment in
the action was binding upon the parties.

The provision of the act of 1868 "relating to the sale of lands in West-
chester county for the non-payment of taxes" (§ 2, chap. 239, Laws of
1868), which requires six months' notice in writing to the mortgagee, of
a sale of the mortgaged premises under tax proceedings, in order to
divest him of his rights, was repealed by implication by the act of
1874 (Chap. 610, Laws of 1874), and under the latter act (§ 25) a mort-
gagee is only entitled to notice that a sale has taken place when he has
filed a notice of his lien in the town clerk's office of the town where
the land is situated, and no mortgagee's rights are saved from such
sale unless such notice has been filed.                         o

An assessment to the estate of a deceased person, either in the case of
resident or non-resident lands, is not a valid assessment.

When assessors determine that lands within their jurisdiction are non-
resident, and proceed to assess them, they must carry out and conform
to the provisions of the statute in relation to such assessments.   (1 R. S.
391, § 11.)   The failure so to do renders the assessment void, and a sale
founded thereon conveys no title.

*It seems* that while the legislature has power to cure defects in assessments
and other proceedings for the imposition and collection of taxes, in cases
where the proceedings have been such that a citizen has had a chance to
be heard before the tax was finally imposed, and the thing omitted which
constitutes the defect is of such a nature that the legislature might, by a
prior statute, have dispensed with it, even in such a case the tax-payer
must be given a reasonable time to pay the tax thus validated.

But where the proceedings are so defective as to result in no valid assess-
ment, and where a sale made under it conveys no title, thus leaving
in the original owner his title or interest unimpaired, the legislature has

no power to validate the sale and thus transfer such title to the purchaser at the tax sale.

The provision, therefore, of the act of 1887 (§ 2, chap. 627, Laws of 1887), confirming sales of land for the non-payment of taxes theretofore made under the act of 1874, so far as it seeks to validate a sale, void because made under a void assessment, is unconstitutional and void.

The question as to the constitutionality of said act may be raised by a mortgagee who, prior to the passage of the act, had a lien by virtue of his mortgage upon land so sold; this lien is property which may not be taken from him without due process of law.

While the mortgagor may waive the illegality of the sale and ratify it so far as he is concerned, he cannot waive the right of the owner of the outstanding mortgage.

*In re Clementi* v. *Jackson* (92 N. Y. 591); *Haight* v. *Mayor, etc.*, (99 id. 280); *Brevoort* v. *City of Brooklyn* (89 id. 128); *Williams* v. *Supervisors of Albany* (122 U. S. 154); *Terrill* v. *Wheeler* (*ante*, p. 76), distinguished.

(Argued October 14, 1890; decided December 2, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made May 13, 1889, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This action was brought for the foreclosure of a mortgage. The facts, so far as material, are stated in the opinion.

*Calvin Frost* for appellant. The defendant Marie H. McLean was improperly made such, and the complaint should have been dismissed as to her. (*E. F. Co.* v. *Lenk*, 6 Paige, 637; *Jones* v. *St. John*, 4 Sandf. Ch. 208; *McReynolds* v. *McManus*, 2 Keyes, 214; 3 Barb. Ch. 438; *Corning* v. *Smith*, 2 Seld. 82; *Holcombe* v. *Holcombe*, 2 Barb. 20; *Lewis* v. *Smith*, 5 Seld. 502; *Dubois* v. *City of Poughkeepsie*, 22 Hun, 117; *Payn* v. *Grant*, 23 id. 134; *E. S. Bank* v. *Chute*, 38 id. 82; *Lanier* v. *Smith*, 37 id. 529; *Frost* v. *Koon*, 30 N. Y. 428; *M. Bank* v. *Thompson*, 55 id. 7; *Rathbone* v. *Henry*, 58 id. 463; *E. I. S. Bank* v. *Goldman*, 75 id. 129; *Brown* v. *Volkening*, 64 id. 84.) The lien of plaintiff's mortgage was divested by the tax sales under which this defendant claims these premises. (Laws of 1874, chap. 610, §§ 6, 7, 25; Laws of 1868, chap. 239, § 2;

*People* v. *City of Brooklyn*, 69 N. Y. 605; *Heckman* v. *Pinckney*, 81· id. 211; *Horton* v. *Cantwell*, 108 id. 255; *Anderson* v. *Anderson*, 112 id. 104.) If assessors have juris-diction they act judicially thereafter, their action can only be reviewed by a direct proceeding for that purpose, and their acts and decisions, however irregular, will not render their final action void, so that it can be attacked collaterally. (*Van, Rensselaer* v. *Cottrell*, 7 Barb. 127; *Brown* v. *Smith*, 24 id. 419; 12 id. 167; 30 id. 619; 53 id. 553; 10 How. Pr. 141; 36 id. 504; 19 Hun, 196; 6 Lans. 291; 37 N. Y. 346; *Barhyte* v. *Sheppard*, 35 id. 238; *Smith* v. *City of Poughkeepsie*, 37 id. 511; *Bank of Commonwealth* v. *Mayor, etc.*, 43 id. 184; *B. S. L. R. R. Co.* v. *Suprs. Erie Co.*, 48 id. 93; *N. Bank* v. *City of Elmira*, 53 id. 59.) If all the irregularities and omissions of statutory requirements claimed by the plaintiff had existed in a single case (and if any one assessment is good the plaintiff's whole contention fails) the curative acts of 1877, chapter 193, section 13, and 1887, chapter 627, section 2, con-firming all sales theretofore had of lands in Westchester county for the non-payment of taxes and vesting in the town and its assignees the titles to the lands so sold, make valid the title of this defendant under each and all of the leases held by her. (Cooley on Const. Lim. 371; *Howell* v. *City of Buffalo*, 37 N. Y. 267; *Lennon* v. *Mayor, etc.*, 55 id. 361; *Haight* v. *Mayor, etc.*, 32 Hun, 153; *Ensign* v. *Barse*, 107 N. Y. 329; *Williams* v. *Bd. Suprs.*, 122 U. S. 154.) There is no foundation for the claim of plaintiff's counsel that the titles of certain of the acts are not sufficient within the provis-ions of the Constitution. (*Ensign* v. *Barse*, 107 N. Y. 329.) Plaintiff erred in claiming that the delivery of the warrant for the collection of taxes signed by the members of the board of supervisors, without the computation extending the tax against the several properties, is a fatal defect in defendant's title. (*Bradley* v. *Ward*, 58 N. Y. 401.)

*Malcom Graham* for appellant. The act of 1868, in regard to notice to mortgagees, is repealed by the act of 1874. (End-

lich on Stat. 210, 272; *People* v. *City of Brooklyn*, 69 N. Y. 605; *Heckman* v. *Pinkney*, 81 id. 211; *Dexter*· v. *L. Co.*, 16 Barb. 15; *People* v. *G., etc., T. Co.*, 98 N. Y. 67; *Daviess* v. *Fairbarn*, 3 How. [U. S.] 636.)   The burden of proof was on plaintiff to impeach defendant's title.   (Laws of 1874, chap. 610, § 6; Laws of 1877, chap. 193, § 5; *Hand* v. *Ballon*, 12 N. Y. 541; *Freeman* v. *Thayer*, 33 Me. 76; *Johnson* v. *Elwood*, 53 N. Y. 431; *Doughty* v. *Hope*, 1 id. 79; *Tallman* v. *White*, 2 id. 66; *Beekman* v. *Bigham*, 5 id. 366; *Coleman* v. *Shattuck*, 62 id. 348.)   The curative acts (Laws of 1877, chap. 193, § 13, and Laws of 1887, chap. 627) are valid. (Cooley on Const. Lim. 371; *Beers* v. *People*, 83 Ill. 488; *Hewitt's Appeal*, 88 Penn. St. 55; *Musselman* v. *Logansport*, 29 Ind. 533; *Thompson* v. *L. I. Co.*, 3 Wall. 327; *Tifft* v. *City of Buffalo*, 82 N. Y. 204; *People* v. *MacDonald*, 69 id. 362; *Astor* v. *Mayor, etc.*, 62 id. 580; *People* v. *Cheritree*, 6 T. & C. 473; *Mann* v. *Utica*, 44 How. Pr. 334; *Clementi* v. *Jackson*, 92 N. Y. 591; *Guist* v. *City of Brooklyn*, 8 Hun, 97; *Duanesburgh* v. *Jenkins*, 57 N. Y. 178; *People* v. *Mitchell*, 35 id. 351; *Brown* v. *Mayor, etc.*, 63 id. 239; *W. Comrs.* v. *Dwight*, 101 id. 9; *Bd. of Excise* v. *Curley*, 9 Abb. [N. C.] 100; *Mundy* v. *Ex.· Comrs.*, Id. 117.)   The acts of 1877 and 1887 cure the present title.   (*Trowbridge* v.· *Horan*, 78 N. Y. 452; *Haight* v. *Mayor, etc.*, 32 Hun, 153; 99 N. Y. 280; Laws of 1886, chaps. 2, 158, § 2; Laws of 1887, chap. 511; *Williams* v. *Bd. Suprs.*, 122 U. S. 154; *State* v. *Jersey City*, 24 N. J. L. 108; *Dickinson* v. *Reynolds* 48 Mich. 158; *Moale* v. *Baltimore*, 61 Md. 224; *Glass* v. *Gilbert*, 58 Penn. St. 266; *Driggers* v. *Cassidy*, 71 Ala. 529; *Bradley* v. *West*, 58 N. Y. 401; 1 T. & C. 413.) The plaintiff cannot take advantage of any irregularities which exist.   (*Hilton* v. *Fonda*, 89 N. Y. 339.)   The plaintiff cannot litigate our title in this action.   (*E. S. S. Bank* v. *Goldman*, 75 N. Y. 129; *Lewis* v. *Smith*, 5 Seld. 502; *E. F. Co.* v. *Lent*, 6 Paige, 637; *Payne* v. *Grant*, 23 Hun, 125; *M. Bank* v. *Thompson*, 55 N. Y. 7; *Rathbone* v. *Henry*, 58 id. 463; *McReynolds* v. *McManus*, 2 Keyes, 214;

*Adams* v. *McPortlin*, 11 Abb. [N. C.] 369 ; *E. S. Bank* v. *Clute*, 33 Hun, 82 ; *Lanier* v. *Smith*, 37 id. 529 ; *Holcombe* v. *Holcombe*, 2 Barb. 20 ; *Frost* v. *Koon*, 30 N. Y. 428 ; *Dubois* v. *City of Poughkeepsie*, 22 Hun, 217.) ·

*Odle Close* for appellant.   Taxes imposed for the support of government take precedence over all other claims, and are paramount and superior to deeds, mortgages, or any incumbrances or liens of any other kind or nature.   Provision is made by section 25 of the Laws of 1874, by which the plaintiff's rights under his mortgage could have been protected by filing in the town clerk's office a notice, as provided for in said section.   (Laws of 1874, chap. 610, § 25 ; *Becker* v. *Howard*, 66 N. Y. 5.)   Defendant MacLean is entitled to the possession of the mortgaged premises under the assessment of 1885.      (*Haight* v. *Mayor, etc.*, 99 N. Y. 280.) That the assessors had failed to give the notice of the completion of the roll, etc., or that there was no proof of the giving of such notice filed in the office of the town clerk is immaterial.   (*Lyth* v. *City of Buffalo*, 48 Hun, 175 ; *People* v. *Turner*, 18 N. Y. S. R. 26.)   The leases are presumptive evidence that all proceedings prior thereto were legal and correct.   (Laws of 1874, chap. 610, § 6 ; Laws of 1877, chap. 193, § 5.)   The oath of the assessor, although not in conformity to the amendment under the Laws of 1885, is a substantial compliance with the statute.   (*R., W. & O. R. R. Co.* v. *Phippany*, 39 Hun, 332.)   The assessments, taxes, sales and leases for the several years in question, if for any reason irregular or defective, have been validated by the Laws of 1887, chap. 627, § 2. (*Denny* v. *Mattoon*, 2 Allen, 383 ; *Lennon* v. *Mayor, etc.*, 55 N. Y. 361 ; *Franklyn* v. *Long Island City*, 32 Hun, 451 ; *Haight* v. *Mayor, etc.*, Id. 153 ; *Howell* v. *City of Buffalo*, 37 N. Y. 267 ; *People ex rel.* v. *Mayor, etc.*, 4 N. Y. 419 ; *Ensign* v. *Barse*, 107 id. 346.)

*Wilson Brown, Jr.*, for respondent.   In the county of Westchester, purchasers at tax sales should give notice of the

sale and purchase to the mortgagees before such mortgagees can be divested of their prior lien upon the premises. (Laws of 1868, 481; 66 N. Y. 51; 100 id. 381;. 2 R. S. [8th ed.] 991, § 11; Browne on Assessments, 418; *Whitney* v. *Thomas,* 23 N. Y. 281; *Hilton* v. *Fonda,* 86 id. 339.) The lands in question were non-resident lands, and should have been designated as such. No such designation appears at the head of any column in any assessment-roll of the town of Greenburgh in evidence in this case. (*Stewart* v. *Crysler,* 100 N. Y. 378, 384.) Taxes on lands imperfectly described or erroneously described must be rejected and not sold. (Laws of 1878, chap. 152, §§ 9, 16, 17, 19; Browne on Assessments, 75; *Tallman* v. *White,* 2 N. Y. 66.) The non-resident's name shall not appear, only a correct description of his land in a separate column, and to assess it to him personally (by name) is error. (*Hilton* v. *Fonda,* 86 N. Y. 339, 347; 45 id. 676; Browne on Assessments, 417, 453, 462; *Stewart* v. *Crysler,* 100 N. Y. 384; Laws of 1878, chap. 152; 33 Hun, 279; 86 N. Y. 339; *People ex rel.* v. *Wemple,* 117 id. 84.) It was illegal to assess to the E. J. Wilson estate in 1876 and every year thereafter. No title is acquired under sale for taxes assessed to " estate of E. J. Wilson." (Browne on Assessments, 68; *Trowbridge* v. *Horan,* 78 N. Y. 439; *Zink* v. *McManus,* 18 N. Y. S. R. 630; *Haight* v. *Mayor, etc.,* 99 N. Y. 280.) The warrants must be complete before signed by the board. Tax titles thereunder are void. (*Bellinger* v. *Gray,* 51 N. Y. 610; *People* v. *Hagadorn,* 36 Hun, 610; 104 N. Y. 516; 2 R. S. [7th ed.] 996, § 36; *Clark* v. *Norton,* 49 N. Y. 243; 65 id. 263; 40 Barb. 644; Browne on Assessments, 87.) There is no notice or proof of giving such notice, or proof of deposit of the roll on file with the supervisor or town clerk, or in their respective offices, nor any proof or notice of posting or publication of notice of completion of the roll and delivery to town clerk for inspection. (Laws of 1880, chap. 269, § 9; *Hilton* v. *Bender,* 69 N. Y. 75.) The notice was not such as is required to be given to persons interested in the property. (Browne on Assessments, 75, 445, 452; 2 N. Y. 66; 90 id. 342; 17 Wkly. Dig. 521; 17 N. Y. 383.) All the fore-

going objections apply generally to nearly every assessment from 1874 to date, and taking each assessment-roll in detail it will appear some years the roll contained no non-resident column, and in other years non-residents are designated by name under the designation of "non-residence," and again in the column of resident owners or taxable inhabitants are the names of persons who are non-residents, and designated in the margin for remarks non-residence, as though afterward ascertained to be non-residents, but not changed to separate assessments. These assessments are void. (*Shattuck* v. *Bascom*, 105 N. Y. 46; *People* v. *Hagadorn*, 36 Hun, 610; 104 N. Y. 516.) Defendant's lease October 6, 1887, based on sale to Maria M. Oliffe of 1886, for taxes of 1885, is founded upon a void assessment. (*Shattuck* v. *Bascom*, 105 N. Y. 39, 45; 86 id. 347; *Stewart* v. *Crysler*, 100 id. 378.) The title of chapter 627, Laws of 1887, is to amend the law of 1874, and to confirm certain sales made under said act. The act attempts to confirm all sales under said act, and it being a local statute and relating to confirmation of all sales of 1874, it is not properly embraced in the title. (*In re M. G. Co.*, 85 N. Y. 526; *Purdy* v. *H. Comrs.*, 54 id. 276; *In re Mayor, etc.*, 99 id. 569, 577; *People ex rel.* v. *Briggs*, 50 id. 553; *In re Van Antwerp*, 56 id. 261; 55 id. 361; *Taylor* v. *Porter*, 4 Hill, 140; *White* v. *White*, 5 Barb. 474; Const. N. Y. art. 3, § 16; 56 N. Y. 261; 4 Barb. 64; 107 N. Y. 337; *People ex rel.* v. *Wemple*, 53 Hun, 200; 117 N. Y. 77, 84.) The holders of tax leases taken subsequent to the mortgage, are proper defendants in a foreclosure suit. (*R. Hospital* v. *Dowley*, 57 How. Pr. 489; *Stewart* v. *Crysler*, 100 N. Y. 384; *Shattuck* v. *Bascom*, 105 id. 44.)

PECKHAM, J.    First. It is claimed on the part of the defendant Mrs. MacLean that she was improperly made a party to the action, and that the motion made at the end of the case to dismiss the complaint as to her, should have been granted on the ground, as therein stated, that her rights under the tax sales and leases set forth in her answer were paramount

and adverse to the claim of the plaintff under his mortgage, and could not, therefore, be adjudicated in a foreclosure action.

Upon the correctness of this abstract proposition, we entertain no doubt, and if the question had been raised in her behalf at the proper time, the complaint should as to her have been dismissed, and an exception to the refusal would have been fatal to the plaintiff's judgment herein.

But we think the defendant by proceeding as she has, waived her right to raise this question, and it is now too late for her to ask this court to set aside the proceedings as to her upon the ground stated. The pleadings show that she has herself sought an adjudication upon this very question in this action.

The complaint has the usual allegation that defendants have or claim to have some interest in or lien upon the premises mortgaged; but that such lien or claim, if any, has accrued subsequently to the lien of the mortgage.

Mrs. MacLean in her answer, puts in issue the allegation that the mortgage is a first lien as alleged in the complaint. She also sets up sales under various tax proceedings, and the leases made thereunder, and alleges that she is now the owner thereof and in possession and entitled to the possession of the premises. She also asks that her rights might be adjudged to be paramount and not subordinate to the rights of the plaintiff under his mortgage, and that she might be adjudged to be the owner of and entitled to the damages mentioned in the complaint for the taking of a portion of the premises by the city of New York.

The plaintiff replied asserting that the leases were void and of no effect, and that any title of defendant under the leases was not paramount, but subordinate to the mortgage. He asked judgment establishing that the plaintiff's mortgage was paramount to the title of defendant under the leases. Upon these pleadings the parties went to trial, and the plaintiff made out a *prima facie* case for the foreclosure of his mortgage.

The counsel for the defendant, Mrs. MacLean, then offered in evidence the various leases printed in the case, under which

she claimed title, and called witnesses to prove that they covered the mortgaged premises, and then rested.

The plaintiff, in answer to the evidence regarding such leases, went into proof tending to show that the assessments and the proceedings following them were irregular and void. All the evidence on that subject offered on the part of the plaintiff and received by the court was taken without any objection on this ground on the part of defendant, and no question of this kind appears to have been thus far raised by her.

After the plaintiff had again rested, the defendant made her motion to dismiss the complaint as to her, and then for the first time her counsel raised the question that her title was paramount to the plaintiff's mortgage, and could not be passed upon in this action. This objection, under facts above set forth, we think was taken too late.

It is not a question of jurisdiction in the court over the parties or the subject-matter, and, hence, consent may waive any irregularity existing in pursuing an investigation of, and in adjudicating upon such questions in an action of this nature.

If such consent be given, and not only mere consent, but a positive request be added and incorporated in the pleadings, we think the court then has the right to pass upon the question. It may, of course, and on its motion, refuse so to do.

In this case the defendant never claimed, either by answer or evidence, that she had been improperly made a party defendant, and that her paramount rights could not be litigated in the action. If she had desired to do this, all the evidence necessary for that purpose would have been the leases showing that she claimed under them, and that they had been executed in due form of law. This would have shown the nature of her claim, and if it were valid it would have appeared to be paramount to the mortgage. Whether it was valid or not would have been a question not to be litigated in this action under her objection taken in due time.

She pursues the opposite course, and in so doing comes directly within the principle decided in this court in *Helck* v.

*Reinheimer* (105 N. Y. 473). A judgment in such case binds all parties to it.

This ground for a reversal of the judgment in this action we hold to be untenable.

Second. Conceding for the purpose of this point that the assessments and sales and leases were otherwise regular and valid, the plaintiff claimed that his lien as mortgagee was not cut off, nor any of his rights under the mortgage divested by reason of such proceedings, because, by the provision contained in section 2 of chapter 239 of the Laws of 1868 (An act relating to the sale of lands in Westchester county for the non-payment of taxes), the plaintiff, as mortgagee, was entitled to six months' notice in writing of the sale of land under the tax proceedings, and that in the absence of such notice he, as such mortgagee, could not, by the express provisions of such section, be divested of his rights in such property. The plaintiff's mortgage had been duly recorded before the sale of the land for any of the taxes, and no notice in writing of such sale had been given him.

The defendant answers this contention by saying that the act referred to was repealed by implication by the passage of the act, chapter 610 of the Laws of 1874, relating to sales of land for unpaid taxes in Westchester county, and that by section 25 of such act a mortgagee was only entitled to notice that a sale had taken place when he had filed a notice of his lien in the town clerk's office where the land was situated, and that no mortgagee's rights were saved from such sale unless such notice had been filed in such office. It is conceded that the plaintiff never filed such notice in the town clerk's office.

If the act of 1868, or the second section thereof, be not repealed, the plaintiff has not been divested of his rights as mortgagee.

A careful perusal of the act of 1868, and also of the various prior acts relating to the proceedings for the collection of unpaid taxes in Westchester county, of which the act of 1868 is an amendment, shows that it was a perfect system within itself, which those acts provided, for such collection.

A like perusal of the act of 1874 must convince anyone that it constituted a new, independent and perfect system for the same purpose as that which previously existed, and that a totally different process in many and important particulars was therein introduced relative to such proceedings.

The later act dropped out the county treasurer as an important functionary in the process, and substituted the supervisor of the town, and the whole proceeding was made in substance one by the town instead of one by the county treasurer. Various provisions abound in each system for the giving of notices and for the conduct of sales of lands, and provisions were made in each in regard to notices to mortgagees. I cannot but come to the conclusion that the act of 1874 was plainly meant to introduce a new system and to embrace all the law upon that subject as against that which was contained in the prior acts upon the same subject relating to Westchester county. The rule in such cases is familiar, and has been several times passed upon by this court, and nothing more need be added to what has been stated in the cases cited. (See *In re Petition N. Y. Institution, etc.,* 121 N. Y. 234; *Anderson* v. *Anderson,* 112 id. 104; *Horton* v. *Cantwell,* 108 id. 255; *People* v. *Jaehne,* 103 id. 182–194; *Heckmann* v. *Pinkney,* 81 id. 211.)

If the proceedings leading to the tax sales and leases were valid, it follows that the rights of the plaintiff were divested by such sales and leases, because he never complied with the terms of the 25th section of the act of 1874, by filing notice of his lien with the town clerk, and it is only in such event that his rights are protected, in case the supervisor fails to give notice as provided for in the section.

Third. The question then presents itself, are the assessments and subsequent proceedings under which the defendant holds the leases, valid?

The defendant claims under five several leases made in the years 1878, 1879, 1881, 1886, 1887, which leases are based upon assessments made in the years 1876, 1877, 1879, 1884 and 1885. The assessments in all these years were made

under the column headed "name," in these words : " Wilson, Edward J., estate." In the roll of 1877 the word "town" appeared over the words " Wilson, Edward J., estate." In that of 1879, the same assessment is made as in 1877, excepting that under the columns " Quantity of land, " " Full value of land," the word " non-resident " is written above the proper answers to be made for each of such columns. In 1884 and 1885, in the column under the word " name " appears the word " non-resident," and beneath that " Wilson, Edward J., estate." There was also seemingly at the bottom of the roll of 1876 a brief description of the property, commencing in this way : " Town described property," " E. J. Wilson, estate, farm, 70 acres," and then followed the boundaries. A reference to the evidence, however, shows that this description is on a different page from that which contained the assessment, the latter being on page 148, and the description on page 201 of the roll. In the roll of 1885, there is added on the right hand margin a brief description of the land.

All these assessments were clearly illegal. The owner of the mortgaged premises down to the time of his death was Edward J. Wilson, and at that time he was a resident of the city of New York. He died in 1876. By virtue of the will of Edward J. Wilson, Edward C. Wilson became the owner of the premises as trustee, and the latter was a resident of the village of Peekskill in the county of Westchester, and has never been a resident of the town of Greenburgh in such county.

The court before whom the trial was had, found as a fact that the mortgaged premises were never assessed as lands of non-residents, and were never assessed after the death of Edward J. Wilson to either the owner or the occupant.

The appellant's counsel claims that the assessments for the years 1876 and 1885, were in compliance with the statute as to assessments upon the lands of non-residents. We do not think so, and we believe the finding of the court that the land was not assessed as "lands of non-residents" to be based

upon sufficient evidence. An inspection of the rolls is enough. The assessment in each of the above-named years is made upon a roll with blanks containing columns for (*a*) the name, (*b*) quantity of land, (*c*) full value of land, (*d*) personal property (*e*) whole amount, real and personal (*f*) tax, dollars, cents. The assessment is not in either roll, in any manner a compliance with the statute in regard to assessments upon the lands of non-residents.

By statute (1 R. S. 391, § 11) the lands of non-residents are to be designated upon the same assessment-roll, but *in a part thereof separate from the other assessments* and in the manner prescribed by the. two next sections (12, 13.) No attempt is made to comply with the conditions contained in either section.

The appellant endeavors to maintain the proposition that this assessment is upon lands of a non-resident, and that the name " Edward J. Wilson estate " is a compliance with the statute, because this is a tract known as the " Edward J. Wilson estate." But we think it plain it is not a name of a tract of land within the meaning of the statute, even assuming that the premises were a tract subdivided into lots.

It is quite obvious that the designation " Edward J. Wilson estate," as contained in the rolls was not an attempt to assess a tract of land under and by its designated name. This is evident from the form of the roll, the language used and the utter absence of any attempt to comply with the provisions of the law as to an assessment upon the lands of non-residents. It was really an attempt to assess those who were the owners of the property under the form of an assessment against the estate of a deceased person.

In *Trowbridge* v. *Horan* (78 N. Y. 439), it was held that it was irregular and unauthorized to make an assessment to an estate; that the words " Estate of A. B." denote no owner, for it cannot be an owner in any sense, and no title could be acquired under a sale for taxes upon such an assessment. An assessment to the estate of a deceased person, in the case of non-resident lands, is not a valid assessment any more than in

the case of lands owned by residents of the town. It is an attempt to make an assessment which is without validity.

The case of *Haight* v. *Mayor, etc., of N. Y.* (99 N. Y. 280) has no similarity. It was decided upon a special statute relating to that city, and the judge, delivering the opinion, said that the system under it differed from that provided in the Revised Statutes for the rest of the state, and that under such system it had been repeatedly held that unless land of residents is assessed to the real owner or occupant by his name, the tax is void. Of course, if assessed without any name of the owner and as lands of non-residents, the sections of the Revised Statutes above cited must be complied with, and the land must be assessed either as a tract subdivided into lots (which was not done), or else as a tract not subdivided, or as one where its subdivisions could not be ascertained by the assessors, in either of which cases the assessors must make a certificate that the land is not subdivided, or that they could not obtain correct information of the subdivisions. This was not done. There is an entire absence of compliance with the statute in assessing these lands, either as the lands of non-residents, or to the owner or occupant. Scarcely one material mandate of the statute is in either case complied with. The learned trial judge has found many other defects in the assessments and many omissions in the description of the lands, both in the assessments and in the leases given to the defendant.

The failure, however, to properly assess these lands prevented the transfer of any title or interest therein to the purchaser at the tax sales, and the original owner retained precisely the same title to the lands after the execution of the various leases that he had prior to the attempted assessment made upon such lands in the years above mentioned. (*Trowbridge* v. *Horan, supra.*)

This brings us to the next question.

Fourth. Does the second section of the act, chapter 627 of the Laws of 1887, vest the title to the property in question in the owner of these invalid leases, to the same extent in all things as if they had legally conveyed the interest which, on

their face, they purport to? The section reads as follows: "All sales heretofore had of lands in said county for the non-payment of taxes under and by virtue of the act hereby amended, are hereby confirmed, and in all cases where land has been bid in under said act for or on behalf of any town, and leases to the town delivered therefor, the title to the lands so sold shall be deemed vested in the town, and the leases therefor shall be assigned and the interest of the town in such lands conveyed in the manner provided by said act as the same is hereby amended."

Holding, as we must, that no title or interest in fact passed to the purchaser at these tax sales, and that the original owner, therefore, still retained his title, the effect of the act in question, if valid, is by legislative fiat to transfer the title of the property of Edward C. Wilson, as trustee, to the lessees under these invalid leases for a hundred or a thousand years, as the case may be. Has the legislature of this state the right to take the property of A and transfer it to B under the guise of confirming sales made of such land *in invitum*, but by which no title, in fact or in law, passed from the owner to the purchaser? The statement of the question should be its best answer. Property thus taken is not taken by due process of law.

This is not a case within the principle that persons who take conveyances of land by deed, or under legal proceedings which lack validity by reason of some omission or informality, take a title or right subject to the power of the legislature to cure such errors or defects by acts of retrospective legislation. Where the proceeding is wholly *in invitum* and the defect of such a nature that no title has passed, the legislature cannot validate or legalize the proceeding to the extent of itself conveying the title under the form of confirming a sale under which no title passed. (See remarks of BIGELOW, Ch. J., in *Denny* v. *Mattoon*, 2 Allen [Mass], 361 at 382–383.)

Nor is the legislation in question an exercise of the power to provide rules of evidence and thus to give a certain effect to a deed or lease as presumptive evidence of the validity of

proceedings before its execution. (*People* v. *Turner*, 117 N. Y. 227.) Nor does it attempt to set up a statute of limitation providing that, after the expiration of a certain time, it should be conclusively presumed that all proceedings were regular. (*People* v. *Turner, supra; Ensign* v *Barse,* 107 N. Y. 329.) It is none of these, but a plain, naked transfer of title by legislation. Any statute which should make a tax deed or lease immediately upon its execution conclusive evidence of a complete and perfect title and thus preclude the owner of the original title from showing its invalidity, would probably be void, because it would, in substance, be an unconstitutional transfer or a confiscation of property, instead of a mere law regulating evidence. I do not refer to cases arising under statutes of limitation, where the owner has some appointed time in which to assert his rights, nor to cases resting on principles of equitable estoppel. (Cooley on Taxation [2d ed.], 297 *et seq.*)

The defendant claims that the act is valid as an exercise of the power to cure defects in assessments and other proceedings for the imposition and collection of taxes. Such curative power is a branch and a part of the legislative power to tax, and must be sustained under it. The legislature undoubtedly has large powers in the way of curing certain defects in proceedings to tax the citizen. In cases where the proceedings have been such that the citizen has had his chance to be heard before the tax was finally imposed, but nevertheless defects have been discovered in such proceedings, if the thing omitted and which constitutes the defect be of such a nature that the legislature might by prior statute have dispensed with, or if something had been done, or done in a particular way which the legislature might have made immaterial, the omission or irregular act may be cured by a subsequent statute. This was so stated, and in substantially identical language, in *Ensign* v. *Barse* (107 N. Y. 329).

Such act might take away from the taxpayer a defense to the further proceedings against him to collect the tax, which he otherwise would have had. (*Tifft* v. *City of Buffalo,* 82

N. Y. 204.)   Yet even in this case I think the taxpayer must
be given reasonable time in which to pay a tax thus validated
or thus imposed by the legislature.   But where the proceedings
are so contrary to the provisions of the statute as to result in
no valid assessment whatever, and where the sales made under
such valid assessment convey no title or interest in the
premises to the purchaser, and the original owner has the
same title or interest in his property that he ever had, there is
no principle upon which to base the power of the legislature
under our Constitution by any legislative act to transfer to the
purchaser the title to the property of the original owner,
which such purchaser would have had if all the proceedings
up to and including the sales had been valid.   No case can, I
think, be found in this state which countenances such doctrine.
From *People* v. *Turner* (117 N. Y. 227), and *Ensign* v. *Barse*
(107 id. 329), back through our reports, I have not been able
to find a case which points to the existence of a power on the
part of the legislature to convey the title of a man's property
from him to another by a mere exercise of the legislative will.

   To hold the act under discussion to be valid is to decide that
the legislature has such a power.

   What difference does it make to say that the legislature is
acting only in the way of validating proceedings to collect a
tax which in justice the owner of the land ought to pay?   The
answer is that the proceedings have been so fatally defective
that no title has passed, and the owner has his title to his
property the same as if no tax proceedings had been taken.
Where is the authority in such case for the legislature to
itself transfer the title to his property to some one else?   If it
be proper that he should pay the tax, the legislature might
itself tax him, giving him opportunity to be heard in some
way before he must pay as to the amount for which he was
liable (*Spencer* v. *Merchant*, 100 N. Y. 585; 125 U. S.
345), or it could provide for further proceedings in order that
a legal tax might be levied, but by no form of words could it
legally transfer the title of the owner to his property to some
third person.

If the proceedings of the taxing power have been so fatally defective on account of a failure to comply with the requirements of the statute, that no title to the property of the taxpayer has passed to the purchaser at the tax sale, I do not think there is any correct principle upon which can be based the claim that the taxpayer nevertheless holds his property from that time on at the mercy of the legislature and subject to its power at any time, so far as he is concerned, to validate and give life and effect to the otherwise void sale. A void sale, the taxpayer has the legal right to regard as no sale, and he has the further right to assume that no proceedings of a legislative character could be taken to transfer his property for the non-payment of a void tax, without the legislature first legalized the tax where that could be done, or itself imposed the tax, and then in either event gave him an opportunity to pay it before proceeding to sell the land.

In the case of *Lennon* v. *Mayor, etc., of New York* (55 N Y. 361), RAPALLO, J., in speaking of the act, chapter 580 of the Laws of 1872, section 7, said that it did "not purport to give validity to sales made prior to its passage, under void assessments, nor could it have that effect. Though it should be held to validate the assessments it could only render them operative from the time of its passage, for it must be upheld, if at all, as an exercise of the power of taxation, whereby the legislature adopted the apportionment and assessment previously made, and imposed the tax directly upon the property affected in accordance with such previous assessment. It is manifest that until after the passage of the act there was no valid tax and no authority to sell the property or any interest therein."

I think it safe to say that sales made without authority and by which no title passed could not be so far validated as to transfer a title by legislative fiat. If the legislature have designated a certain way in which to make an assessment, although it could easily have designated some other just as legal, yet the manner designated must in substance be carried out, although many of the provisions might have been omitted

by the legislature, and a constitutional assessment still levied. If any of those provisions of a material nature have been omitted, so that no valid assessment has been made, and no title transferred to the person assuming to purchase at the subsequent tax sale, I am fully persuaded there is no power in the legislature to pass any act the effect of which shall be to thereby transfer the title of the original owner to the purchaser, to the same extent as if the whole proceedings from assessment to sale had been valid.

This cannot be done under the guise of confirming sales of lands theretofore made for the non-payment of taxes. If such proceedings have been so far futile as to leave the title to his property in the original owner, notwithstanding the attempt to transfer it by the statutory proceedings, no legislative act can take such title from him and transfer it to another. This answers the question asked by defendant's counsel, in referring to the case of *Shattuck* v. *Bascom* (105 N. Y. 39), whether the legislature having power to dispense with the assessor's oath in the first instance, could not have validated a sale made upon an assessment in which the oath actually taken was so defective as to amount to a fatal variance from the statute?

The variance was such as to render the assessment void (*Shattuck* v. *Bascom, supra; Breevoort* v. *City of Brooklyn,* 89 N. Y. 128), and hence no title passed under the tax sale. In such case there can be no doubt that the legislative power stops far short of transferring the title by the simple process of attempting to confirm this void sale. The validating act passed to cure the defects set out in the *Breevoort* case (*supra*) assumed to validate the taxes in the manner therein pointed out, and did not, even on its face, extend to the validating of a title procured by a sale for the non-payment of the taxes upon the void assessment. The tax was validated, but a time was therein given to the taxpayer to pay the same, and the act was in effect the laying of a tax with opportunity for the taxpayer to pay it before any proceeeding could be taken to deprive him of the title to his property. (*In re Clementi* v.

*Jackson*, 92 N. Y. 591.) After the passage of the act above referred to, no taxpayer could further resist the payment of his tax on the ground of past irregularities. The steps there-after taken to continue or to inaugurate proceedings to collect the tax could not be assailed on account of the irregularities existing at the time of its passage.

This is all that is meant by Judge EARL in his opinion in *Terrel* v. *Wheeler*.* There is not a suggestion in that opinion looking to the point that the legislature could validate a void sale so as to thereby transfer a title.

The case of *Williams* v. *Supervisors of Albany* (122 U. S. 154) is not opposed to these views. It will be seen that the act which validated the assessments, and which is cited at length in the report (Chap. 345 of the Laws of 1883), pro-vided for a notice to those originally assessed, and gave them an opportunity to be heard before the assessors for the purpose of reducing their assessment, and to enable the author-ities to return to them any amount taken from them in excess of the legal sum. There was no thought of interfering with any title to property, nor of transferring it from one person to another by virtue of legislative decree. It was nothing but the validating of a tax. It was in no manner an interference with titles.

We are of the opinion that the act under consideration is unconstitutional, in so far as it seeks to validate a wholly void sale of the owner's real property, or an interest therein, under void assessments.

Fifth. But the defendant's counsel claims that the plaintiff as a mortgagee simply, has no standing in court to take advan-tage of this point.

I cannot see why. Prior to the passage of the act in ques-tion he had a good and specific lien on this estate as a security for the payment of a debt due him. This lien was property, and property which could not be taken from him without due process of law. Taking the land upon which it rested by the

*Ante,* page 76.

power of taxation, and under valid proceedings to collect a valid tax against the owner, would be due process of law But to legislate the title from the owner into the hands of a purchaser at a void sale upon a void assessment for general taxation and to thus deprive the mortgagee of his lien, is no exercise of the taxing power, and it cannot be done.

It is said that the owner of property subject to taxation may waive any legislative or even constituional privilege in his favor, and that if he choose to avail himself of such privilege and waive the illegal character of the assessment no one could prevent it. This is true. But by what method is he to waive his rights? He can so far waive them as to pay the tax assessed upon his property, although it be based upon an invalid assessment. He can waive the illegal sale and ratify it so far as he is concerned. But he cannot, by any waiver, waive an outstanding mortgage out of existence. He may waive his own rights in other words, but not those of third parties. Although a mortgagee takes his mortgage subject to the rights of the land owner to consent or submit to an illegal assessment, that consent or submission cannot go to the extent of ratifying a void sale of his land under proceedings to collect an invalid tax, where such ratification is to have the effect of transferring his title to a third person freed from the lien of the mortgage.

But there is in this case no fact of consent or submission on the part of the land owner. It only appears that his land was illegally assessed and illegally sold, and where his consent or submission to such illegal action is to be found I do not know. We think the mortgagee in this case had a right to raise the question of the invalidity of the leases.

What has been said in regard to the character of the omission to assess this property according to the statute meets the objection made by the defendant that the defect is not of that species which permits any one to raise it in a collateral way. The assessors, in making an assessment of lands within their jurisdiction, act in a certain sense and to a certain extent judicially. If they decide that the land is the land of a non-

resident, and so assess it, probably their action when erroneous does not subject them to individual liability for such error. This was stated in *Railroad Co.* v. *Supervisors of Erie* (48 N. Y. 93, 105). But where assessors determine that certain land within their jurisdiction is land of a non-resident, and then proceed to assess it and utterly fail to carry out or obey the commands of the statute as to assessments upon the lands of non-residents, they fail to make a valid assessment, and no sale of lands founded thereon can convey a title.

We have looked at all the other questions raised by the learned counsel for the defendant and fail to find any reason for disturbing the judgment below. We have not been unmindful of the importance of the questions depending upon our decision, and it has induced a very careful consideration thereof. How many titles depend upon this legislative act we of course do not know, but we are unable to see in it anything other than an attempt by mere legislative power to take the property of A. from him and give it to B.

The due process of law provided for in our Constitution will not permit this to be done.

The judgment of the court below should be affirmed, with costs.

All concur.

Judgment affirmed.