PATTERSON, P. J., and McLAUGHLIN, J., concur. RUMSEY, J., dissents.

---

### In re REID.

(Supreme Court, Appellate Division, Second Department. June 22. 1900.)

1. TAXATION—FORM OF ASSESSMENT—VALIDITY.
    Under a statute requiring property to be assessed for taxation in the name of the owner, an assessment to the heirs of A. is invalid.
2. SAME—VOLUNTARY PAYMENT OF VOID TAX—RECOVERY.
    Taxes voluntarily paid under a void assessment cannot be recovered back under Laws 1892, c. 686, § 16, providing that the board of supervisors shall "cause to be refunded to any person the amount collected from him of any tax illegally or improperly assessed or levied."
3. SAME—SCHOOL TAXES.
    The assessment of school taxes being made, under Laws 1894, c. 556, by the school trustees, and the taxes collected by their collector, such taxes, when illegally assessed, cannot be recovered back under Laws 1892, c. 686, § 16, providing for the refunding of taxes paid under a void assessment which has come before the board of supervisors for its "action, confirmation, or review."

Appeal from Rockland county court.

Application by Emma G. Reid for the refunding of certain taxes alleged to have been illegally assessed. From an order directing

the board of supervisors of Rockland county to refund the taxes to the petitioner (64 N. Y. Supp. 1121), the board appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

Thomas H. Lee, for appellant.

Edward Wells, Jr., for respondent.

GOODRICH, P. J. This proceeding was instituted by petition and order to show cause why certain taxes should not be refunded under section 16 of chapter 686, Laws 1892, known as the "County Law," which provides as follows:

"Any such board [of supervisors] may correct any manifest clerical or other error in any assessment or returns made by any one or more town officers to such board, or which may, or shall have properly come before such board for its action, confirmation or review; and cause to be refunded to any person the amount collected from him of any tax illegally or improperly assessed or levied, and upon the order of the county court, it shall refund any such tax."

The taxes were of three kinds: (1) State, county, and town taxes; (2) road tax; (3) school tax, district No. 2. They were assessed and paid as follows:

|  | State. | Road Tax. | School Tax. |
| --- | --- | --- | --- |
| 1893 | $484 80 | $175 00 | $140 00 |
| 1894 | 462 00 | 175 00 | 150 00 |
| 1895 | 595 00 | 157 50 | 195 77 |
| 1896 | 560 00 | 126 00 | 179 20 |
| 1897 | 526 00 | 111 84 | 164 12 |
| 1898 | 676 00 | 218 40 | 213 51 |

These, with collector's fees, amounted in all to $5,361.99. The parties made the following stipulation:

"The parties to the above-entitled proceeding hereby stipulate and agree upon the following statement of certain facts to be submitted to the court for determination thereon: (1) That the petitioner, Emma G. Reid, during the years 1893, 1894, 1895, and 1896 was a nonresident of Rockland county, and during the years 1897 and 1898 was a resident of, and in the town of, Haverstraw, New York. (2) That the state, county, and town taxes mentioned in the petition, the refund of which is sought in this proceeding, were voluntarily paid by the petitioner each year to the then collector of taxes of the town of Haverstraw, as alleged in the petition. (3) That the highway or road taxes for the years 1893 and 1894, a refund of which is also sought in this proceeding, were voluntarily paid by the petitioner in each of those years to the then overseer of highways having charge of the highway district or districts in the town of Haverstraw, in which the real property of the petitioner was situated. (4) That the road tax for the years 1895, 1896, 1897, and 1898, the refund of which is also sought in this proceeding, was voluntarily paid by the petitioner in each of those years, under the county-road system, to the then collector of taxes in the town of Haverstraw. (5) That the school taxes mentioned in the petition, the refund of which is also sought in this proceeding, were levied each year by the school authorities of school district No. 2 of the town of Haverstraw, and were paid by the petitioner to the then collector of taxes for said school district No. 2 of the town of Haverstraw. (6) That the assessment for taxation in each of the years 1893 to 1898 of the real property of the petitioner was made by the then assessors of the town of Haverstraw in the form, 'Reid, Aaron B., Heirs of,' as alleged in the petition. (7) That the assessors of the town of Haverstraw for the years 1893–98, on completion of the assessment roll for the then current year, and in compliance with the statute governing assessments and taxation, gave due public

notice that they would, on a day and at a place in such notice mentioned, meet to hear the complaint or objection of any person considering himself or herself in any way aggrieved by said assessment, and that at none of said meetings to hear grievances, held in pursuance to said notices, did the petitioner, or any one in her behalf, appear and object in any way to the assessment for the then current year of the real property of the petitioner; nor was there any objection, formal or informal, made, filed, or entered by or on behalf of the petitioner with any of said boards of assessors, or any individual member thereof, on any of said grievance days, against the assessment of the real property of the petitioner, or the form thereof, for the years mentioned in the petition."

It thus appears that the property was assessed in the form of, "Reid, Aaron B., Heirs of." In Trowbridge v. Horan, 78 N. Y. 439, the court held that an assessment of property under the heading, "Blackwell, R. N., Est.," was not a valid assessment; saying (page 442):

"The words 'estate of A. B.' is not and cannot be an owner [sic] in any sense whatever. The title to real property is always vested in some person or corporation, either absolutely or in trust, and the statute requires the assessment to be made to the owner, and it is irregular and unauthorized to make an assessment to an 'estate.' No title could be acquired under a sale for taxes by such an assessment."

A similar decision was made in Cromwell v. MacLean, 123 N. Y. 474, 486, 25 N. E. 932. See, also, Haight v. Mayor, etc., 99 N. Y. 280, 1 N. E. 883. We conclude, therefore, that the taxes in the case at bar were illegally assessed.

In Adams v. Board, 154 N. Y. 619, 49 N. E. 144, property was assessed in the name of "Estate of Mrs. L. M. Wilcox," and later in the name of "Heirs L. M. Wilcox." The court held that the assessment was illegal, and, considering the question of voluntary payment, declared that "it would not be very difficult to show that the payment in this case was compulsory"; but it also said:

"Whether it was or not, the executor had the right to have the money refunded, since the statute was intended for the benefit of a party who pays an illegal tax voluntarily, as well as one who pays under what the law terms 'duress.' "

It would seem that this latter conclusion was not essential to a decision of the question involved.

In the present proceeding it is proper to say that the learned county judge based his decision on the Adams Case; saying that it was obvious that that decision, as to the rights of the executor to maintain the proceeding, was wholly dependent upon the question whether he had such an interest in the property as to entitle him to claim that he was not a mere volunteer in paying the taxes. Since the decision in the Adams Case, however, the court of appeals has had under consideration another proceeding, in which it has construed and distinguished its previous decision in the Adams Case, to wit, McCue v. Board, 162 N. Y. 235, 56 N. E. 627, where property was assessed to the "estate of Henry McCue." The court affirmed a judgment of the appellate division, in the Fourth department, holding that the assessments in question were void upon their face; citing the Trowbridge and Cromwell Cases. The petitioner was the son of Henry McCue, who died leaving a will by which he devised

to his wife a house and lot. The petitioner resided upon the property with his mother, the owner and occupant, and for nine years paid the taxes, as above stated. The court held that the petitioner paid the taxes as a mere volunteer, and had no interest to protect and no obligation to discharge; that the assessments were void on their face, and that no effort was made to collect them; that the section "does not apply to taxes voluntarily paid, but to those collected under the compulsion of law, as was the case in Adams v. Board, where the land assessed had been sold for nonpayment of the taxes there involved"; and that neither the statute nor the authority invoked by the appellant had any application to the case. In the present proceeding the stipulation expressly states that the several taxes "were voluntarily paid by the petitioner," and the Case of McCue is conclusive upon us and against the right of the petitioner to maintain this proceeding.

There remains, however, a question whether the school taxes are within the provisions of section 16, above quoted. The respondent contends that the statute applies to all taxes, including school taxes, while the appellant contends that such taxes never come before the board of supervisors "for its action, confirmation, or review." The consolidated school law (chapter 556, Laws 1894), which, in matters essential to this question, does not differ from the act in force when the school taxes of 1893 were levied and paid, provides for the assessment of the school tax by the school trustees, and the collection of the same by their collector; and the stipulation states that they were so levied and collected. We find no provision of law by which, and no allegation in the petition that, the school taxes in question ever came before the board of supervisors for their "action, confirmation, or review." On the contrary, it appears that all action in regard to them, both as to levy and collection, was taken by the school board and its collector. Consequently we must hold that there was no authority in the county court to make an order for the refunding of the school taxes sought for in this proceeding. The order should be reversed.

Order reversed, with $10 costs and disbursements. All concur.