TOWN OF ISLIP, Respondent, *v.* COUNTY OF SUFFOLK, Appellant.

Second Department, March 19, 1920.

**Poor** — apportionment of expense of maintenance of almshouse and support of poor persons between county of Suffolk and towns therein — right of town to recover alleged excess payments — when apportionment of expense by proper officials final.

Where the superintendent of the poor of the county of Suffolk in accordance with section 9 of the Poor Law prepared an annual statement of the expenses incurred by him during the preceding year for the support of the town poor, exhibiting a deficiency as the total amount had been advanced and paid by the county, and the board of supervisors then proceeded according to said section and apportioned the deficiency among the several towns in accordance with the number of inmates which each

town had in the almshouse and the number of days which each inmate remained there, and this levy was based, not upon an account kept by the county treasurer, but upon the report of the superintendent of the poor, and the expense of the maintenance of the almshouse, which is a county charge, was levied upon the towns in accordance with their assessed valuations, and the statute was in substance complied with, except that instead of each town raising an estimated amount and placing it in the possession of the county treasurer for the support of its poor, the county has first paid for such support and has been reimbursed in the following year by the several towns, a town claiming that the sum raised by general taxation for the maintenance of the almshouse is greater than it should be and basing its claim entirely upon the testimony of an expert who examined the reports of the superintendent of the poor and the minutes of the board of supervisors is not entitled to recover alleged excess payments to the county.

In the absence of fraud or deceit, the apportioning of the expense of maintaining the county almshouse and the support of the poor therein being an administrative function, the action of the proper officials thereon is final. Such duties cannot be devolved upon the courts, especially long after the action in question and after the money has been raised and expended.

Moreover such an action cannot be maintained by the town, even if its contention be sustained that not enough money has been raised directly by the towns based upon the number of town poor in the almshouse and that the county has raised more than its proportionate share for the maintenance of the almshouse and that this latter sum has been levied upon the several towns in accordance with their assessed valuations.

APPEAL by the defendant, County of Suffolk, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Suffolk on the 1st day of May, 1919, upon the report of a referee appointed by consent of the parties to hear and determine the issues in the action.

*Percy L. Housel,* for the appellant.

*Alexander Slater,* for the respondent.

JAYCOX, J.:

In this action the plaintiff claims that it has been obliged to pay to the county of Suffolk sums in excess of the sum which said plaintiff was required to pay for the support of its poor in accordance with the Poor Law. It is claimed that taxes for the support of the town poor have been levied and collected, not in accordance with the number of poor of the

plaintiff town, but in accordance with the assessed valuation of the property in said town. There are town poor in Suffolk county, and the county keeps and maintains an almshouse. Under section 8 of the Poor Law the county treasurer is required to open and keep an account with each town in which the town shall be credited with all moneys received from the same or from its officers and shall be charged with all moneys paid for the support of its poor, and the superintendent of the poor is also required to make a report to the county treasurer each year showing the sums charged to the several towns for the support of their poor, which shall be charged to such towns respectively by the county treasurer in his account. This section of the law was apparently disregarded by the officials of the county of Suffolk and for the purposes of this action we may safely treat it in the same manner as the same information eventually reached the board of supervisors, the body which imposes the taxes, and plaintiff's cause of action does not arise by reason of any failure to keep an account. It is based solely on one proposition, and that is that by reason of the manner in which the taxes have been levied and assessed the plaintiff has been required to pay more than its proportionate share for the support of the poor of the county of Suffolk.

The procedure in Suffolk county was as follows: The county paid the entire cost of the maintenance of the almshouse and the support of the poor, both county and town poor. In accordance with section 9 of the Poor Law, the superintendent of the poor annually made out a statement of the expenses incurred by him during the preceding year for the support of the town poor and of the moneys received therefor, exhibiting the deficiency in the funds provided for defraying such expenses. No funds had been provided or received for this purpose. The total amount had been advanced and paid by the county. There was, therefore, a deficit owing by each town of the total amount paid for the support of its poor. The town cannot, I think, complain because no estimate was made and no moneys raised in advance any more than it could for an erroneous estimate. If an estimate had been made and the money raised had been insufficient, the same procedure would have been adopted as to the deficit that was here adopted for

the full sum expended for the support of the town poor.  The board of supervisors then proceeded according to said section 9 of the Poor Law and apportioned the deficiency among the several towns in proportion to the number of town poor in such towns who had been provided for by such superintendent, and charged the towns with such proportion.  These amounts were fixed in accordance with the number of inmates which each town had in the almshouse and the number of days which each inmate remained there.  The amounts so fixed were thereupon levied and collected by the several towns with the other contingent expenses of the town.  This levy was based, not upon an account kept by the county treasurer, but upon the report of the superintendent of the poor.  The county treasurer's accounts would necessarily have been based upon the same thing.  The county treasurer had no funds in his hands because none were raised in advance.  His account, therefore, would have been only a copy of the expenditures of the superintendent of the poor.

Section 11 of the Poor Law requires the superintendent of the poor to present to the board of supervisors at its annual meeting an estimate of the sum which, in his opinion, will be necessary for the support of the county poor during the ensuing year.  This was not done by the superintendent.  Instead, he submitted a report in which he charged to the county each year the cost of supporting the county poor in the same manner and at the same rate he did the town poor.  At the same time and in the same report he showed the total cost of the support of all the poor, both town and county, during the past year, together with the cost of maintenance of the almshouse.

Although there has not been a strict compliance with the statute, still each officer and board required to take action under the statute possessed at the time of taking such action the same information he would have had had the statute been strictly complied with, except an estimate of the sum which in the superintendent's opinion would be necessary during the ensuing year for the support of the county poor. The only difference in the result at all material is that instead of each town raising an estimated amount and placing it in the hands of the county treasurer for the support of its poor, the county has first paid for the support of all the poor and

Second Department, March, 1920.          [Vol. 191.

the following year the towns have reimbursed the county. The plaintiff suffered nothing by this method.

The plaintiff's other cause of complaint, and this I think is the gravamen of its action, is the claim that not enough money was raised by apportioning the cost of supporting the poor among the towns in proportion to the number of inmates from the respective towns in the almshouse. The almshouse is a county institution, maintained at the expense of the county, and each town is chargeable with its share of the expense of maintaining it, whether there are any town poor therein or not. This expense is raised by a tax levied upon the towns in accordance with their assessed valuations. In addition to this, each town is required to pay for the support of its poor (Poor Law, §§ 8, 10), and the amount necessary for this purpose shall be levied among the several towns in proportion to the number and the expenses of the town poor of such towns respectively. (§ 9.) The superintendent of the poor could only charge to each town the amount paid for the support of the poor of that town, and the superintendent of the poor of Suffolk county has construed " support " to mean the actual cost of food and clothing furnished. The plaintiff claims in effect that the towns and the county are partners and that the total expense or practically the total expense of maintaining the almshouse and supporting the poor therein should be divided according to the number of inmates therein chargeable to the respective towns and the county. The plaintiff asserts that a larger amount is charged to the county for maintaining the almshouse than is properly so chargeable. This latter amount (the county's share) is levied upon the towns in accordance with their assessed valuations, and as Islip's valuation is greater in proportion to the number of its town poor than some of the other towns, it is claimed that the plaintiff has paid more than its proportion.

An examination of the reports of the superintendent of the poor shows that he has stated all the expenditures for the maintenance of the county almshouse and the support of the poor therein. He has then shown separately the cost of food and clothing, which he construes to be the cost of supporting the poor therein. This sum is much less than the total sum previously mentioned. This smaller sum is divided among

the towns and the county in accordance with the number of inmates which the respective towns and the county have therein. The balance of the total sum, or the cost of maintaining the almshouse, is made a county charge and the amount thereof is raised by assessment upon the towns in accordance with their assessed valuations. It will be seen by this that the superintendent determines upon an amount which might be called an " overhead charge " for maintaining the county almshouse and deducts this from the total amount as an item chargeable to the county alone. That there is necessarily such a sum so deductible is not questioned, the basis of the complaint being merely that the sum so deducted and raised by general taxation is greater than it should be.

When the superintendent has exercised his judgment as to the amount chargeable to the towns and the county, and the board of supervisors has approved it and levied and collected taxes in accordance therewith, their decision should not be disturbed.

The plaintiff's contention is based entirely upon the testimony of an expert who has examined the reports of the superintendent of the poor and the minutes of the board of supervisors and from such examination has reached the conclusion that items have been improperly included in what I have referred to as the " overhead charge." This seems to be a poor basis upon which to reject the action of administrative officers who have with apparent honesty and fairness made an apportionment of these expenses. If this may be done, some other town may employ another expert whose ideas as to the proper division of these expenses differs from the ideas of the expert employed in the present case and the county may be required to pay over in accordance with his conclusions. If the county farm should be run at a profit, the reverse of the proposition now urged would then be presented. In the absence of fraud or deceit, the apportioning of the expense of maintaining the county almshouse and the support of the poor therein being an administrative function, the action of the proper officials thereon is final. Such duties cannot be devolved upon the courts, especially long after the action in question and after the money has been raised and expended.

There is nothing to show that the action did not, when taken, meet with the approval and concurrence of the town of Islip as represented in the board of supervisors by its supervisor. Upon at least one occasion the resolution confirming the taxes as extended upon the rolls of the several towns was offered by the supervisor of the plaintiff town who verifies the complaint in this action.

I am further of the opinion that if the plaintiff's contention is sustained, still this action cannot be maintained by the town. The moneys which the town seeks to recover are not the moneys of the town. The town never had any interest therein. The plaintiff does not contend that moneys raised for the support of the town poor have been diverted to other purposes. It claims that not enough money has been raised directly by the towns, based upon the number of town poor in the almshouse, and that the county has raised and paid more than its proportionate share for the maintenance of the alms-house and that this latter sum has been levied upon the several towns in accordance with their assessed valuations. My attention has been called to no authority holding that such a situation gives rise to a cause of action in favor of a town, and I am unable to see any basis for such a holding. The authorities cited by the plaintiff are not in point. It cites *Wood* v. *Supervisors of Monroe County* (50 Hun, 1); *People ex rel. City of Tonawanda* v. *Fitzhenry* (170 App. Div. 227); *Strough* v. *Board of Supervisors* (119 N. Y. 212); *Woods* v. *Supervisors, etc.* (136 id. 403); *Vinton* v. *Board of Supervisors* (89 Hun, 582); *City of Buffalo* v. *County of Erie* (88 Misc. Rep. 591); *Port Richmond* v. *County of Richmond* (11 App. Div. 217); *Bridges* v. *Board of Supervisors of Sullivan County* (92 N. Y. 570); *Crowninshield* v. *Supervisors of Cayuga County* (124 id. 583), and a number of other cases, all of which have relation to a situation where the county has had in its possession for a certain purpose funds belonging to a town or municipality and has misappropriated such funds. The plaintiff also cites *Guaranty Trust Co.* v. *City of New York* (108 App. Div. 192). In that action a taxpayer was permitted to recover a void tax. This would seem to indicate that if the taxes or any portion thereof involved in this action were void, the remedy lies with the taxpayer himself and not with the plaintiff. The

plaintiff cites another line of authorities of which *Tuma* v. *Piepenbrink* (77 Misc. Rep. 357) is an example.   These authorities are merely to the effect that actions in relation to the town's property are to be brought by the town itself.   In the case last mentioned trustees of town lands endeavored to bring an action in relation to lands belonging to the town. The title of the land not being in the trustees, it was held that the cause of action inured to the town and that the action must be brought in its name.

Findings of fact 15 and 16 and the conclusions of law contained in the decision should be reversed, as should also the refusal to find the defendant's proposed finding of fact No. 11, and the defendant's proposed finding of fact No. 11 is found.   The interlocutory judgment should be reversed, with costs, and the complaint dismissed, with costs.

RICH, PUTNAM, BLACKMAR and KELLY, JJ., concur.

Findings of fact 15 and 16, and the conclusion of law contained in the decision, and also the refusal to find defendant's proposed finding of fact 11, reversed, and defendant's proposed finding of fact 11 found.   The interlocutory judgment is reversed, with costs, and the complaint unanimously dismissed, with costs.   Settle order on notice.