HAZEL R. DUNKUM, Appellant, *v.* MACECK BUILDING CORPORATION, Respondent.

Second Department, October 29, 1929.

*George B. Davenport* [*George S. Parsons* and *Howard C. Tracy* with him on the brief], for the appellant.

*Richard H. McIntyre,* for the respondent.

HAGARTY, J. This action was brought under the provisions of sections 500 to 508, inclusive, of the Real Property Law (added by Laws of 1920, chap. 930, as amd. by Laws of 1925, chap. 565),* to determine the validity of an adverse claim made by the defendant to a parcel of real property, the ownership of which is claimed by the plaintiff and described in the complaint. This action involves, not only the validity of a tax deed executed on the 30th day of July,

---

* Since amd. by Laws of 1929, chap. 639.— [REP.

1869, by the Comptroller of the State of New York to one Josiah Talmadge, conveying the premises in question, based upon a sale made by the Comptroller in November of 1866, for the non-payment of taxes assessed against the premises, and recorded on the 23d day of October, 1871, but the sufficiency of a redemption from the tax sale on the 2d day of March, 1880, and whether or not this action is barred by the provisions of limitation of liability contained in chapter 448 of the Laws of 1885 and chapter 908 of the Laws of 1896.

The facts were submitted to the learned trial court upon an agreed statement, and no exception has been taken by the appellant to any of the findings of fact contained in the decision of the court. The appellant has, however, excepted to the conclusions of law contained in said decision, and also to the refusal of the court to make a finding of fact and certain conclusions of law proposed by her.

The property here involved was vacant and unoccupied, and was located on the northwesterly side of Parrott place (formerly Jefferson street), 250 feet southwest of Ninetieth street (formerly known as Lexington avenue), in the borough of Brooklyn, city of New York. The appellant traces her title by an unbroken record chain beginning with a deed made by George S. Gelston and wife to Daniel Sharkey on the 1st day of July, 1854, and recorded on the 5th day of November, 1855, and culminating in a deed made by the Narrows Park Company, Inc., to her on the 11th day of April, 1926, and recorded on the twenty-third day of the same month. Immediately after the conveyance to plaintiff, the plaintiff caused a sign to be erected thereon advertising the premises for sale, and maintained such sign thereon until the time of the trial. Moreover, the plaintiff and her predecessors in title have paid all taxes and assessments imposed upon the premises subsequent to the taxes for the non-payment of which the property was sold.

Respondent's claim of title originates in the Talmadge tax deed, based upon the sale made by the Comptroller in November of 1866 for non-payment of the taxes of 1856 and 1857. There is no evidence that the defendant or its predecessors in title were ever in actual possession of the premises or ever asserted any claim or performed any of the obligations of ownership therein prior to the demand which gave rise to the commencement of this action.

In the pleadings the respective parties allege the essential facts necessary to an action of this character, each claiming ownership and possession and an adverse claim by the other, but the defendant does not plead that this action is barred by the Statute of Limitations.

The appellant contends that the tax sale was invalid because at the time of the assessment under which such taxes were levied, the premises were non-resident lands, and in the assessment rolls the lands of non-residents were not designated in a separate part of the assessment roll, but were intermingled indiscriminately with those of residents, and the names of the owners, or supposed owners, were entered in the column set apart for the taxable inhabitants, and also that the Comptroller's deed was invalid because no notice to redeem from the tax sale was published prior to the execution and delivery of the deed. Appellant further relies upon a redemption from the tax sale on the 2d day of March, 1880. Bearing upon this question of redemption, one Daniel Sharkey, the grantee under the Gelston deed of July 1, 1854, gave back to George S. Gelston a mortgage to secure the payment of eighty-five dollars in three years, with interest at seven per cent per annum, and, by assignment dated January 15, 1855, and recorded June twenty-third of the same year, Gelston assigned the mortgage to one Joshua C. Sanders, who, it is claimed, on March 2, 1880, redeemed the premises from the tax sale of 1866. Sanders, the mortgagee, subsequently became the owner of the fee.

The learned trial court found that on the 4th day of August, 1857, Sanders acknowledged the execution of a certificate of satisfaction of the eighty-five dollar mortgage, and that on the 31st day of August, 1904, nearly fifty years thereafter, the mortgage was canceled and discharged of record by the filing of the certificate of satisfaction, which, during this period, had been retained by Sanders after its execution, and was filed and recorded at his request or on his behalf; that Sharkey, by a full covenant and warranty deed, dated November 21, 1854, and recorded in the Kings county register's office on the 5th day of November, 1855, conveyed the premises to one William Bennett. Bennett and wife, by a bargain and sale deed dated July 14, 1869, and recorded on the 27th day of November, 1880, conveyed the premises to Sanders; that the source of defendant's title, the Comptroller's deed to Talmadge of July 30, 1869, and recorded on the 23d day of October, 1871, recited that the premises were conveyed for non-payment of taxes after compliance with all of the provisions of law pursuant to a public auction sale in November, 1866, and that the sale was for the non-payment of the taxes levied on the premises for the years 1856 and 1857. The court then found that at the time of the making of the assessments, the premises were non-resident lands and that in the assessment rolls " the lands of non-residents were not designated in a separate part, but were intermingled indiscriminately with those of residents and the names of the owners

or supposed owners were entered in the column set apart for the names of taxable inhabitants." It was then found that no notice of the tax sale and requiring redemption therefrom was published or given to any occupant or mortgagee of the premises, and that in February of 1880 an affidavit of Sanders was filed in the office of the State Comptroller accompanied by a certificate of the register of Kings county in connection with an application of Sanders to redeem the premises from the sale, in which affidavit and certificate it was stated that the mortgage made by Sharkey to Gelston, on July 1, 1854, was still on record and unpaid with interest from the 9th day of July, 1867. It was further found that the Comptroller of the State of New York issued a certificate dated the 2d day of March, 1880, which was recorded in the office of the register of Kings county on the 2d day of September, 1904, stating that " a certain payment made to the said treasurer by said Joshua C. Sanders was intended to be applied for the redemption of the aforesaid premises sold for taxes in 1866, and that said redemption was made without service of the notice required by Section 77, Chapter 427, Laws of 1855, as amended by Section 2, Chapter 280, Laws of 1870." Then we have the finding that by affidavit, verified the 19th day of March, 1895, Josiah Talmadge swore that since the conveyance of July 30, 1869, by the Comptroller to him, he had not conveyed the premises or sold or contracted to sell them, and that he was entitled to receive the amount paid into the treasury of the State for the redemption of the premises from the tax sale of 1866; that the action was commenced more than one year after Laws of 1896, chapter 908, section 132, became effective; that at the request of plaintiff the amount paid by Talmadge for the premises at the tax sale of November, 1866, was three dollars and sixty-eight cents, and that the amount paid by Sanders to redeem was five dollars and sixteen cents. The court refused to make the finding at plaintiff's request that after the filing in the office of the Comptroller in February, 1880, of the affidavit of Sanders, the Comptroller, in accordance with the custom of his office, notified Talmadge, the grantee in the Comptroller's deed, of the application of Sanders to redeem, and granted him to February 24, 1880, to present such objections thereto as he might deem proper.

The conclusions of law then found upon these facts were that the Comptroller's deed is conclusive evidence of the regularity of all proceedings prior to the expiration of the time to redeem; that this action was barred by the Statute of Limitation of liability in chapter 448 of the Laws of 1885 and chapter 908 of the Laws of 1896; that at all times the premises were vacant and unoccupied; that there was no valid redemption by any mortgagee; that the

premises have been in possession of the defendant for upwards of one year preceding the commencement of this action, and that the plaintiff unjustly claims an estate in fee simple therein.

The court refused plaintiff's request to find that the assessments for the years 1856 and 1857 were not made in compliance with the requirements of the statute, and that the taxes levied thereunder were void, and that the sale was without authority of law and void; that the Comptroller's deed of July 30, 1869, is not conclusive evidence of the regularity of all proceedings prior to the expiration of the time to redeem; that the premises were validly redeemed by Sanders on or prior to the 2d day of March, 1880; that the recording in the office of the register of Kings county on the 2d day of September, 1904, of the State Comptroller's certificate of redemption, dated March 2, 1880, as found by the court, constituted valid constructive notice of such redemption to all persons claiming title under the Comptroller's deed; that the rights of Sanders became fixed on that day, *i. e.*, the 2d day of March, 1880, and were not affected by the subsequent passage of chapter 448 of the Laws of 1885 or section 132 of chapter 908 of the Laws of 1896; that by virtue of the conveyance to her, the plaintiff acquired a good and valid title, and that this action is not barred by the laws to which I have referred. The court refused to find possession in the plaintiff, and also that the defendant or its predecessors in title had never been in possession and claimed unjustly. To the court's refusal to find as requested by the plaintiff, exceptions were duly taken.

The first question for determination is whether or not the action is barred. Since this defense was not pleaded, it is not available to the defendant as a defense. This was specifically held in *Nehasane Park Association* v. *Lloyd* (167 N. Y. 431) as to chapter 448 of the Laws of 1885, where it was urged that whatever defects may have existed in the deed under which the defendant claimed were cured by this law. The following is from the opinion (p. 438): " In so far as this statute has any application to this case it is a statute of limitations and nothing else. (*Meigs* v. *Roberts*, 162 N. Y. 371; *Hulbert* v. *Clark*, 128 N. Y. 295; *Cromwell* v. *MacLean*, 123 N. Y. 474; *People* v. *Turner*, 117 N. Y. 227.) This statute operates only as a bar to the remedy, and inasmuch as the defendant has not pleaded it in his answer it is not available as a defense. (*Hayden* v. *Pierce*, 144 N. Y. 512; *Titus* v. *Poole*, 145 N. Y. 414; *Hamilton* v. *Royal Insurance Co.*, 156 N. Y. 327.) We assume that it is elementary law that a party to an act on who would take advantage of a statute of limitations must plead it as a defense."

The plaintiff and her predecessors have always been in con-

structive possession at least of the property by virtue of their record title. The distinction between actual and constructive possession is pointed out in the opinion written by Judge FOLGER in *Churchill* v. *Onderdonk* (59 N. Y. 134, at p. 136). Having defined actual possession, he then says that " It is the contrary of a possession in law, which follows in the wake of title, and is called constructive possession." The defendant contends that this doctrine favors it as well as the plaintiff, but the fact is that it never took steps to acquire possession, or to assert ownership, prior to the presentation of its claim which led to the commencement of this action. The plaintiff's constructive possession is based upon her chain of title over a period of upwards of seventy years and actual possession since April of 1926. Further, the plaintiff and her predecessors in title have paid all the taxes. The defendant, therefore, by reason of its answer, occupies the position in this case of a plaintiff in ejectment (Real Prop. Law, § 504), having incumbent upon it the sustaining of the burden of proof. But more than all that, the appellant's predecessor in title did not neglect the tax sale, but paid the amount due, with interest, to the proper authorities in March of 1880, and his rights, if any, became vested at that time. The question now is whether or not he is charged with notice of any Statute of Limitations later enacted, relating to a matter which he deemed to have been closed.

The tax sale in the record before us was had under section 65 of chapter 427 of the Laws of 1855 (as amd. by Laws of 1860, chap. 209, § 1), which provided, among other things, that " all conveyances hereafter executed by the Comptroller, of lands sold by him for taxes, shall be presumptive evidence that the sale, and all proceedings prior thereto, from and including the assessment of the land, and all notices required by law to be given previous to the expiration of the two years allowed to redeem, were regular, according to the provisions of this act, and all laws directing or requiring the same, or in any manner relating thereto." Subsequently this section was amended by section 1 of chapter 448 of the Laws of 1885, which provided, among other things, that such conveyances shall be executed by the Comptroller, and that " all such conveyances that have been heretofore executed by the Comptroller, and all conveyances of the same lands by his grantee or grantees therein named, after having been recorded for two years    *    *    *,  and all outstanding certificates of a tax sale heretofore held by the Comptroller that shall have remained in force for two years after the last day allowed by law to redeem from such sale shall, six months after this act takes effect, be con-clusive evidence that the sale and all proceedings prior thereto, from and including the assessment of the land and all notices

required by law to be given previous to the expiration of the two years allowed by law to redeem, were regular and were regularly given, published and served according to the provisions of this act, and all laws directing or requiring the same, or in any manner relating thereto, and all other conveyances or certificates heretofore or hereafter executed or issued by the Comptroller, shall be presumptive evidence of the regularity of all the said proceedings and matters hereinbefore recited, and shall be conclusive evidence thereof from and after the expiration of two years from the date of recording such other conveyances or of four years from and after the date of issuing such other certificates." The section further provides that all such conveyances and certificates and the taxes and tax sales on which they are based shall be subject to cancellation, " as now provided by law," on a direct application to the Comptroller or an action brought before the court, by reason of the legal payment of such taxes, or by reason of the levying by a town or ward having no legal right to assess.

This chapter of the Laws of 1885, as originally enacted, was made applicable only to certain specified counties, which did not include Kings county, but by chapter 217 of the Laws of 1891, section 1, it was made applicable to Kings county.

Sections 131 and 132 of the Tax Law, being chapter 908 of the Laws of 1896, read as follows:

" § 131. Comptroller's deed.— After the expiration of one year from the time of sale, the Comptroller shall execute in the name of the People of the State, to the purchaser thereat, his heirs or assigns, a conveyance of any lands so sold by him for taxes and not redeemed, under his hand and official seal, and witnessed by the Deputy Comptroller, or State Treasurer, which shall vest in the grantee an absolute estate in fee simple, subject to all claims which the State may have thereon for taxes or other liens or incumbrances, and which shall be presumptive evidence that the sale and all proceedings prior thereto, from and including the assessment of the lands sold, and that all notices required by law to be given previous to the expiration of the time allowed by law for the redemption thereof, were regular and in accordance with all the provisions of law relating thereto. After two years from the date of such conveyance such presumption shall be conclusive. The Comptroller may receive evidence of the loss or wrongful detention of any certificate, and on satisfactory proof of the fact may execute and deliver a deed to such person as may appear to be the rightful owner of such certificate.

" § 132. Effect of former deeds.— Every such conveyance heretofore executed by the Comptroller, county treasurer or county

judge and all conveyances of the same lands by his grantee or grantees therein named, which have for two years been recorded in the office of the clerk of the county in which the lands conveyed thereby are located, and all outstanding certificates of a tax sale heretofore held by the Comptroller, that shall have remained in force for two years after the last day allowed by law for redemption from such sale, shall be conclusive evidence that the sale and proceedings prior thereto, from and including the assessment of the lands, and all notices required by law to be given previous to the expiration of the time allowed for redemption, were regular and were regularly given, published and served according to the provisions of all laws directing and requiring the same or in any manner relating thereto, but all such conveyances and certificates, and the taxes and tax sales on which they are based, shall be subject to cancellation, by reason of the payment of such taxes, or by reason of the levying of such taxes by a town or ward having no legal right to assess the land on which they are laid, or by reason of any defect in the proceedings affecting the jurisdiction upon constitutional grounds, on direct application to the Comptroller, or in an action brought before a competent court therefor; provided, however, that such application shall be made, or such action brought, in the case of all sales held prior to the year eighteen hundred and ninety-five, within one year from the passage of this act; and in the case of the sale of eighteen hundred and ninety-five and of all sales hereafter held, that such application shall be made, or such action brought, within five years from the expiration of the period allowed by law for the redemption of lands sold at the particular sale sought to be cancelled."

These are the statutes which the learned trial court has held constituted a bar to this action, and by virtue of which it also held that the Comptroller's deed constitutes conclusive evidence of the validity, not only of the tax sale, but of all proceedings thereafter and prior to its delivery. (See, also, Tax Law of 1909, §§ 131, 132, as since amd. by Laws of 1928, chaps. 845, 850.)

But the plaintiff stands on possession, and it is for the defendant to establish its title as in an ejectment suit in which it is the plaintiff. (Real Prop. Law, *supra; Best Renting Co.* v. *City of New York,* 248 N. Y. 491; *People* v. *Faxon,* 111 Misc. 699; *People* v. *Durey,* 126 id. 642; affd., 221 App. Div. 816.) In the *Faxon Case (supra)* it was held that the sections to which I have referred did not prohibit the defendant in possession from setting up a defect in the tax sale as a defense in an action brought against him, as witness the following (p. 708): " Statutes of Limitations operate to bar a remedy. The defendants are not making an attack. They are defending."

(See, also, *Clark* v. *Kirkland*, 133 App. Div. 826; affd., 202 N. Y. 573.)

The cases upon which the respondent relies (*Meigs* v. *Roberts*, 162 N. Y. 371; *Doud* v. *Huntington Hebrew Congregation*, 178 App. Div. 748, and *Halsted* v. *Silberstein*, 196 N. Y. 1) were all actions in ejectment to recover the possession of property then in the possession of the adverse party. While the courts held that the Statutes of Limitation would run against a claimant out of possession under the circumstances, they recognized the doubtful character of the converse of the proposition. *Wallace* v. *McEchron* (176 N. Y. 424) was an action for partition, in which one of the defendants claimed under a tax deed which had been recorded for more than a year. The plaintiff claimed that the Comptroller failed to return the tax upon application, for the non-payment of which the premises had been sold, and the court held that under such circumstances the plaintiff's rights were not barred by section 132. The following is quoted from the opinion written by Judge CULLEN (p. 427): " It, therefore, becomes necessary when any case involving the construction and effect of one of these statutes is presented to closely scrutinize and carefully analyze the statute to see whether as to such case the statute applies, and if applicable, whether its operation is that of a curative act or of a Statute of Limitations."

The Comptroller's deed is not conclusive evidence of the regularity of all prior proceedings up to the expiration of the time to redeem from the tax sale. The Legislature may not make a Comptroller's deed given on a tax sale which is based upon a void assessment, or which is void by reason of the failure to publish a notice to redeem as required by the statute, conclusive evidence against an owner in possession. The following is quoted from Cooley's Constitutional Limitations (Vol. 2 [8th ed.], p. 763): " It has consequently been held that a statute which, after a lapse of five years, makes a recorded deed purporting to be executed under a statutory power conclusive evidence of a good title, could not be valid as a limitation law against the original owner in possession of the land." Further (p. 769): " A statute, therefore, which should make a tax deed conclusive evidence of a complete title, and preclude the owner of the original title from showing its invalidity, would be void, because being not a law regulating evidence, but an unconstitutional confiscation of property."

If we may assume that the assessment of the taxes, for the non-payment of which the sale in question was had, was void, and that the Comptroller's deed was also void because of the failure to publish any notice to redeem prior to the delivery of his deed as required

by the statute, I think the act fell far short of the remedies accredited to it by the defendant. The following is quoted from the opinion written in *Marx* v. *Hanthorn* (148 U. S. 172): " Without going at length into the discussion of a subject so often considered, we think the conclusion reached by the courts generally may be stated as follows: It is competent for the Legislature to declare that a tax deed shall be *prima facie* evidence not only of the regularity of the sale, but of all prior proceedings, and of title in the purchaser, but that the Legislature cannot deprive one of his property by making his adversary's claim to it, whatever that claim may be, conclusive of its own validity, and it cannot, therefore, make the tax deed conclusive evidence of the holder's title to the land." To the same effect is *Cromwell* v. *MacLean* (123 N. Y. 474). (See, also, *Ostrander* v. *Bell*, 199 App. Div. 304; *Bennett* v. *Kovarick*, 23 Misc. 73; *Joslyn* v. *Rockwell*, 128 N. Y. 334; *People* v. *Inman*, 197 id. 200; *Peterson* v. *Martino*, 210 id. 412.)

The assessment of the premises for the taxes of 1856 and 1857, for the non-payment of which the property was sold by the Comptroller in 1866, was invalid and the sale void. The law under which the assessment was made was contained in the Revised Statutes, part 1, chapter 13, title 2, article 2, sections 8, 9, 11 and 12 (1 R. S. 390, 391; 1 R. S. [5th ed.] 909, 910). The assessments of the premises in question, which formed the basis of the sale under which the defendant claims, failed to comply with the requirements of the statute in that:

(1) The lands of non-residents were mingled with those of residents, and were assessed in the same manner, and were not grouped together in a part of the roll separate from the other assessments; and

(2) Two names are given in the alternative in the column headed " Names of Taxable Inhabitants," while the statute required that the names of non-resident owners be not given.

The assessments of non-resident lands, in failing to comply with the statute in the respect stated, were illegal and void. (*Sanders* v. *Carley*, 83 App. Div. 193; affd., 178 N. Y. 622; *Hagner* v. *Hall*, 10 App. Div. 581; affd., 159 N. Y. 552; *Schreiber* v. *Long Island Railroad Co.*, 127 App. Div. 286; *Cromwell* v. *MacLean, supra; People ex rel. Barnard* v. *Wemple*, 117 N. Y. 77.)

Since no notice to redeem was published by the Comptroller prior to the delivery of the deed, as required by law, the deed was invalid. It is provided by section 50 of chapter 427 of the Laws of 1855, under which, as I have stated, the sale was had, that the owner or occupant of any such land so sold, or any other person, may redeem the same, as thereinafter provided, at any time

within two years after the last day of such sale, by paying to the State Treasurer, on the certificate of the Comptroller, for the use of the purchaser, the sum mentioned in the certificate, with interest. The law further provides (§ 61) that the Comptroller shall, at least six months before the expiration of the two years allowed for redemption, prepare a notice specifying the land remaining unredeemed, and the amount necessary to redeem, and stating that unless such lands are redeemed by a certain day, they will be conveyed to the purchaser. The law further provides that such notice shall be published. While section 65 provides that the Comptroller's deed shall be presumptive evidence that all notices required to be given prior to the expiration of the two years allowed to redeem were regular, a certificate of the State Tax Commission, received in evidence, shows that after diligent search, no proof of publication of the notice required under section 61 can be found. The State Tax Commission, within the State Department of Taxation and Finance, is the proper depository for such papers. (See State Departments Law, §§ 5, 7; Id. §§ 133, 137, as added by Laws of 1926, chap. 553.) The court expressly found that no notice to redeem was in fact published. True, respondent contends that this finding was an inadvertence, and that we may, if necessary to affirm, make a new finding. However, I think the court intended to make such a finding. There is no evidence that it was due to inadvertence.

All the essential steps prescribed by statute in connection with the sale of lands for non-payment of taxes must be complied with. (*Brevoort* v. *City of Brooklyn*, 89 N. Y. 128, 132; *Sanders* v. *Downs*, 141 id. 422.) The giving of an opportunity for redemption is an essential prerequisite to the validity of the Comptroller's deed. (*Clason* v. *Baldwin*, 152 N. Y. 204.) *Ostrander* v. *Darling* (127 N. Y. 70), relied upon by the respondent as an authority for its claim that the Comptroller's deed was conclusive evidence of the publication of the notice to which I have referred, was an action brought by the record owner who had previously caused the tax sale to be canceled by the Comptroller on his, the owner's, application, without notice to the purchaser, and the court held such cancellation invalid. There were in the record copies of a notice to redeem, apparently published, but no proof of publication was produced.

The conclusion of law that the Comptroller's deed is conclusive evidence of the regularity of all proceedings prior to the expiration of the time to redeem, is contrary to both the evidence and the law and should be reversed.

But, in any event, Sanders' redemption from the tax sale of

1866 was good. The parts of chapter 427 of the Laws of 1855, under which the sale was held, regulating the mortgagee's right to redeem, which were in effect at the time of the tax sale in November of 1866, are contained in sections 76 to 81, inclusive. Section 76 provided that no sale of real estate for the non-payment of any tax should destroy the lien of any duly recorded mortgage, except as thereinafter provided. Section 77 then provided that it should be the duty of the purchaser at such tax sale to give to the mortgagee a written notice of the sale, requiring him to pay the amount of the purchase money, with interest, at the rate allowed, within six months after the giving of such notice. Section 77, however, was amended by section 2 of chapter 280 of the Laws of 1870 by adding thereto the following: " Such notice may be given at any time after the expiration of two years from the last day of such sale." Section 78 provided that, if such payment be made, the sale should be of no further effect, and that the mortgagee should have a lien on the premises for the amount paid, with interest. Section 79 provided that in case the mortgagee should fail to make such payment within the time thus limited, he shall not be entitled to the benefit of section 76. Section 80 defined the term " mortgagee " as including an assignee, personal representatives, etc. Section 81 provided that the notice required by section 77 might be given either personally or in the manner required by law, in respect to notices of protest, etc. By section 3 of chapter 280 of the Laws of 1870, section 81 was amended by providing- for the filing of proof of service of the notice in the Comptroller's office within one month after the service. Section 82 provided as follows: " § 82. The notice required to be given under the last preceding five sections, in cases of sales by the Comptroller, shall be directed only to such persons as shall within two years from the time of such sale file in the office of the Comptroller, a notice stating the name of the mortgagor and mortgagee, the date of the mortgage, and the amount claimed to be due thereon, and the county, town and tract in which the mortgaged premises are situated, with the number of the lot on which said mortgage is claimed to be a lien, with the name of the person or persons claiming notice, their residence, and the post-office to which such notice shall be addressed; in case such mortgagee or other person shall omit or neglect to file such notice with the Comptroller within the said two years, then said mortgagee or other person shall be barred from all claim to redemption by virtue of said mortgage, and the title of the purchaser shall become valid and effectual the same as if such mortgage had not existed."

This last quoted section, however, was repealed by section 1

of chapter 285 of the Laws of 1862, and was not, therefore, in force at the time of the sale. Therefore, there was, at that time, no limitation upon the duty imposed by section 77 upon the purchaser at a tax sale, to give to a mortgagee written notice of any such sale, and it necessarily follows that if the mortgagee did not file with the Comptroller a notice and a description of his mortgage, the purchaser was under an obligation to ascertain any duly recorded mortgage on said premises and to give the required notice to the mortgagee or the assignee under any recorded assignment, to start the time running. But section 1 of chapter 280 of the Laws of 1870 did not confer on the mortgagee any new or additional right to redeem, which he did not have at the time of the sale, but merely regulated the manner in which he might exercise his previously existing right under sections 76 to 79 of the act of 1855. This right does not rest upon implication. The section of the law to which I refer reads as follows:

" A mortgagee whose mortgage is duly recorded, * * * who shall have filed with the Comptroller, as required by law, a notice and description of his mortgage, may, at any time after the sale of all or any part of the mortgaged premises for unpaid taxes, and before the expiration of six months from the giving of the notice required by section seventy-seven of chapter four hundred and twenty-seven of the laws of eighteen hundred and fifty-five, entitled ' An act in relation to the collection of taxes on lands of non-residents, and to provide for the sale of such lands for unpaid taxes,' may redeem the said premises so sold, or any part thereof, from the said sale. If the said sale shall have been made by the Comptroller, such redemption shall be made by paying to the State Treasurer, upon the certificate of the Comptroller, for the use of the purchaser, his heirs or assigns, the sum mentioned in his certificate, with interest at the rate allowed by law in the case of redemption by occupants from the date of such certificate; and, if the said sale shall have been made by a county treasurer, or other county officer, the redemption shall be made by paying to the county treasurer the amount for which said lands were sold, with interest at the same rate from the day of sale. The mortgagee or assignee of a mortgage or other person redeeming lands sold for unpaid taxes, as authorized by this section, shall have a lien on the premises so redeemed for the amount paid, with interest thereon from the time of such payment, at and after the rate of seven per centum per annum, in like manner as if the same had been included in the mortgage. Section one of chapter two hundred and eighty-five of the laws of eighteen hundred and sixty-two, entitled ' An act to amend chapter four hundred and twenty-

seven of the laws of eighteen hundred and fifty-five,' passed April seventeen, eighteen hundred and sixty-two, is hereby repealed."

I am of the opinion that the act of 1870 may be wholly disregarded without destroying the mortgagee's existing right of redemption. The fact that it also repealed the act of 1862, which had itself repealed section 82 of the act of 1855, even if it thereby reinstated section 82, as was held in *Chard* v. *Holt* (136 N. Y. 30), cannot have affected, to his injury, the mortgagee's right to redeem which he had acquired at the time of the sale, especially by limiting the time within which he might file with the Comptroller a notice and description of his mortgage to two years from the date of the sale, which period had already expired. Since the purchaser at the tax sale did not limit the mortgagee's right to file a notice and description of his mortgage and thus redeem from the sale, the redemption was, in my opinion, valid.

Sanders was fully justified in keeping separate the estate for the purposes of redeeming. When Sanders took his deed from Bennett, in July, 1869, the two years allowed to redeem from the sale of November, 1866, had already expired. He then held the mortgage as a valid lien, by a duly recorded assignment. His omission to record the deed is a significant indication, to my mind, of his intention not to merge the mortgage in the fee. There appears to be no one inequitably affected by his failure to record the deed. The holder of the tax deed might have served on Sanders a notice which would have required him to redeem promptly, but he did not do so, and, therefore, Sanders' time was extended until he did redeem. A merger will not take place where the intention, and especially the interest, of the parties require otherwise. (See *Smith* v. *Roberts*, 91 N. Y. 470, 476; *Van Nest* v. *Latson*, 19 Barb. 604, 608; *Purdy* v. *Huntington*, 42 N. Y. 334, 342, 350; *Townsend* v. *Provident Realty Co.*, 110 App. Div. 226.) Emphasis is laid upon the date of the satisfaction piece. I think it was of no consequence. It may have been executed in advance of an expected payment, and does not imply falsity. Certainly there was no one to be harmed by it. Moreover, the record here is that the mortgage was not paid at the date of the satisfaction piece. Further, it cannot be consistently argued that the record of the Comptroller's deed was notice to Sanders, or to his successors in interest, since the deed was not executed or recorded when Sanders took his deed from Bennett in July, 1869. Sanders was an owner in possession, not claiming title through any party to that deed. It was, therefore, no notice to him.

The judgment in favor of the defendant should be reversed upon the law, with costs, and judgment directed for the plaintiff upon

the facts, with costs. Findings of fact and conclusions of law inconsistent herewith are reversed, and new findings and conclusions will be made.

LAZANSKY, P. J., RICH, CARSWELL and SCUDDER, JJ., concur.

Judgment in favor of defendant reversed upon the law, with costs, and judgment directed for plaintiff upon the facts, with costs. Findings of fact and conclusions of law inconsistent herewith are reversed, and new findings and conclusions will be made. Settle order on notice.