WILLIAM J. BRADFORD and Others, Respondents, *v.* COUNTY OF SUFFOLK, Appellant.*

Second Department, November 13, 1939.

* Modfg. and affg. 172 Misc. 970.

*Ralph Stout* [*Harry S. Austin* with him on the brief], for the appellant.

*M. E. Harby*, for the respondents.

JOHNSTON, J. This is an action for a declaratory judgment. Although the nominal plaintiffs are taxpayers of the town of Huntington, in reality the action is between the town and the county of Suffolk. The controversy relates to the proper method to be used by the county in apportioning among the several towns within the county the cost of certain types of relief, to wit, home relief, work relief, and hospitalization, furnished by the county pursuant to the provisions of the Public Welfare Law (§§ 25, 26 and 27) and the Temporary Emergency Relief Act (Laws of 1931, chap. 798, as amd.).

Plaintiffs claim that the cost of such relief may be taxed against the respective towns in the county only in the same manner as all taxes are levied under the Tax Law (Art. 3, § 50 *et seq.*), that is, by the equalization method. The county contends that under the provisions of the Public Welfare Law (*supra*) and the Temporary Emergency Relief Act (*supra*) it is authorized to " charge back " to each town the actual cost of the relief which it furnished to the inhabitants of each town. The primary question is one of statutory construction. There is no dispute as to the facts.

Specifically, the action is to declare invalid two resolutions of the board of supervisors (one dated September 24, 1934, and the other October 26, 1936), which authorized the " charge back " system, and the tax warrant issued November 29, 1937, by the county to the receiver of taxes of the town of Huntington in so far as it commands him to collect and pay to the county $30,135.65 for work relief, $32,147.45 for hospitalization and $110,041.99 for home relief, making a total of $172,325.09, computed on the " charge back " basis. On the equalization basis the total amount would be $117,739.31. The warrant covers the county's expenditures for relief for the 1937 fiscal year beginning November 1, 1936. Complaint is made only with respect to the assessment for the three items of relief mentioned for the 1937 fiscal year.

Before considering the merits it will be necessary to dispose of a preliminary objection. The county contends this is not a proper case for a declaratory judgment because plaintiffs may obtain adequate relief by availing themselves of the statutory rights accorded to taxpayers. (Gen. Mun. Law, § 51.) While under that statute plaintiffs may have a remedy, as the legality and construction of statutes and constitutional questions are involved, and as a decision will be of assistance to the local authorities, we

believe a declaratory judgment will serve a useful and practical purpose. Under such circumstances the court, in the exercise of discretion, may render a declaratory judgment. (Civ. Prac. Act, § 473; *Dun & Bradstreet, Inc.,* v. *City of New York,* 276 N. Y. 198; *James* v. *Alderton Dock Yards,* 256 id. 298; *Socony-Vacuum Oil Co., Inc.,* v. *City of New York,* 247 App. Div. 163.)

Under the Public Welfare Law (§§ 25, 26 and 27) the county has the option of itself administering all relief and paying the cost thereof or of sharing the responsibility of administration and dividing the cost between itself and the respective towns. When the responsibility is shared and the cost divided, the county is required to assume the responsibility for certain types of relief furnished to certain classes of persons and to bear the cost thereof; while the towns (or the cities within the county) are required to assume the responsibility for other types of relief furnished to other designated classes of persons and to bear the cost thereof; and in some instances, to be mentioned presently, the county is permitted to " charge back " to the respective towns the moneys it was required to spend on certain types of relief for certain classes of persons. Properly to interpret and apply the statute — the provisions of which are far from clear — it is necessary that these provisions first be analyzed. In the following paragraphs the sections referred to are sections of the Public Welfare Law.

For the purpose of administration of public relief, the State is divided into county and city public welfare districts. Each of the counties in the State is constituted a county public welfare district, except that certain large cities, such as Kingston, Poughkeepsie, etc., are constituted city public welfare districts, and the remaining territories in the counties in which such cities are located are constituted county public welfare districts. (§ 17.)

Responsibility for the administration of all public relief and care, and for the expense thereof, may be borne entirely by the county public welfare district or it may be divided between that district and the towns and cities therein, in accordance with the provisions of the statute. (§ 25, opening ¶.) The choice as to whether the administrative responsibility and the expense shall be borne entirely by the county public welfare district or whether they shall be divided, rests with the board of supervisors. But unless the board takes affirmative action to select one method or the other, the system of divided responsibility and cost becomes operative under the statute. (§ 25, subds. 1 and 2; §§ 26 and 27.)

If the county public welfare district desires to assume complete responsibility and expense, it proceeds first by having the board of

supervisors adopt a resolution " directing that the cost of all relief and care shall be a charge on the county public welfare district." (§§ 26 and 27.) The board may then adopt a further resolution determining " that the county public welfare district shall also administer public relief and care in the towns and cities in its territory." With respect to towns, from the effective date of the resolution the county public welfare district becomes responsible for the administration of all public relief and care therein, all the provisions of law as to the powers and duties of towns and of town welfare officers in the district are declared inoperative, and the appointment of town welfare officers and employees is terminated. With respect to the cities in the county public welfare districts, the same results follow after the resolution of the board of supervisors is confirmed by the legislative body of the city. (§ 27.)

If the board of supervisors does not affirmatively undertake to bear the complete administrative responsibility and the entire expense of relief, then the scheme of divided responsibility and cost as set up in the statute automatically becomes operative. (§§ 25, 27.) The divided responsibility scheme may be summarized as follows: The towns and cities forming part of the county public welfare district are required to administer home relief and medical care and pay the expense thereof, except that the responsibility of the cities and towns extends only to persons having a settlement or residing therein, and excludes defective or physically handicapped children and children born out of wedlock. (§ 25, subds. 1 and 2.) The county public welfare district assumes responsibility for providing all relief and care for persons having a settlement in a town or city in its territory for which such town or city is not responsible under subdivisions 1 and 2 of section 25, as well as for the relief of persons in its territory who have no settlement in such town or city. (§ 25, subd. 3, ¶ 1.) However, the county board of supervisors, by resolution, may " direct that the cost of any or all of the types of the relief and care of persons having a settlement in a town or city paid for by the county public welfare district under the provisions of subdivision three of section twenty-five shall be charged back to the town or city." (§ 26.)

With respect to certain enumerated types of relief, to wit: "(a) Institutional care of an adult; (b) Relief and care for any child who is cared for away from his parents, for defective or physically handicapped children, and for children born out of wedlock; (c) Hospital care; (d) Home relief and medical care of persons residing in the district but in a town or city other than that of their settlement; (e) Home relief and medical care of persons residing in another public welfare district " (§ 25, subd. 3),

which are administered by the county public welfare district to persons having a settlement in a town or city in the district, the cost of such relief may also be " charged back to such town or city if the regulations established by the board of supervisors so direct." If it is to be charged back pursuant to such regulations, then the county commissioner of public welfare " shall immediately notify the town or city public welfare officer of any person alleged to have a settlement in his town or city, the cost of whose relief and care is to be charged back to such town or city." (§ 25, subd. 3, ¶¶ 2, 3.)

In 1931 the provisions of the Public Welfare Law became further complicated by the enactment of the Temporary Emergency Relief Act (Laws of 1931, chap. 798), certain provisions of which will hereinafter be referred to by section numbers. The purpose of this act was to extend State aid to municipalities, so as to enable them to enlarge the relief furnished during the period of acute economic distress. This act created during the period of the emergency a new form of relief, to wit, work relief. (§ 2.) By section 9 it also permitted home relief (shelter, fuel, food, clothing, etc.) to be furnished by a municipal corporation (defined as a county or a city), or a town (where home relief is a town charge). The cities and counties were divided into public welfare districts (§ 6) and in each district a local emergency work bureau was set up to administer work relief. (§ 7.) With respect to home relief, the administration thereof was left to the public welfare commissioners of the existing city and county public welfare districts, except that in a county welfare public district, where home relief is a town charge, it was provided that the town public welfare officers should administer home relief. (§ 13.) For the relief to be furnished under that act, the legislative body of the municipal corporation or town was authorized to appropriate and make available sufficient funds and to raise funds by issuing interest-bearing notes payable within a period not exceeding three years. (§ 10.) The municipalities and the towns that furnished the relief were entitled to State aid which, in the case of home relief, amounted to forty per cent (§ 16); and in the case of work relief there was to be an equitable distribution among the municipalities from the sum of $20,000,000 appropriated by the act. (§§ 17, 33.) Additional appropriations by the State and changes in the original act were made from time to time. (Laws of 1932, chap. 567; Laws of 1933, chaps. 9, 34, 69 and 259.)

Chapter 259 of the Laws of 1933 amended section 10 of the original Temporary Emergency Relief Act, relating to local funds for relief, by directing that in any county which has appropriated money or issued certificates to cover such appropriations for home relief or work relief, the board of supervisors may direct that the county

shall be reimbursed " from the taxable property within the county public welfare district for whose benefit said appropriation was made."

With this summary of the statutory background. we may now consider the two resolutions which are attacked.

The first resolution, dated September 24, 1934, apparently was adopted pursuant to the amendment of section 10 of the Temporary Emergency Relief Act, made by chapter 259 of the Laws of 1933. This resolution provided that " Work Relief moneys raised by the County of Suffolk be charged back to each town on the basis of the amount used by each town instead of on the basis of assessed valuation." It should be here noted that for the period from January 1, 1934, to October 31, 1936, the administration and the cost of relief were divided between the county and the several towns, that is, the system of divided administration and cost obtained.

The second resolution, dated October 26, 1936, changed the then existing system of divided responsibility and cost effective November 1, 1936, and, pursuant to the Public Welfare Law, placed complete responsibility upon the county for both the administration and the cost of all types of relief and, pursuant to chapter 259 of the Laws of 1933 (amending the Temporary Emergency Relief Act), directed that the cost of all types of relief and care of persons having a settlement in any town in the county be " charged back " against each town.

The precise question to be determined is whether these statutes (the Public Welfare Law and the Temporary Emergency Relief Act, as amended) authorize a " charge back " to each town for the moneys actually expended by the county for the use of its residents, or whether the county is required to raise these moneys in the ordinary manner, that is, by levying a tax computed under the equalization method, as provided in the Tax Law. I believe there is no authority for the " charge back " and, therefore, the resolutions would have to be declared invalid were it not for considerations hereinafter mentioned.

By the resolution of October 26, 1936, the county as of November 1, 1936, expressly assumed complete control and responsibility for the administration and cost of every type of relief. Under such circumstances there is no provision in the Public Welfare Law (§§ 25, 26 and 27) for any " charge back " or assessment against the respective towns. Under the statute the " charge back " may come into operation only in certain instances when there is divided responsibility between the towns and the county, that is, when the towns administer and pay for certain types of relief to certain

classes of persons, and when the county is obligated to administer and pay for other types of relief to other classes of persons. In such a case of joint responsibility the county in some instances is entitled to charge back to the several towns the moneys actually disbursed for the care of their inhabitants. But when no such divided or joint responsibility exists and when the county has elected to assume full responsibility, the county must also assume the obligation to bear the full cost.

Therefore, in the absence of specific statutory authority to the contrary, when the county, under the Public Welfare Law, assumes complete control, it is required to raise the money it expends for relief purposes in the same manner that it raises other moneys expended by it for governmental purposes, namely, by the equalization method, as provided in the Tax Law. In other words, the right to " charge back " is a special right which is accorded to the county only in the case of divided responsibility.

This conclusion finds ample support in the Poor Law, which was repealed when the Public Welfare Law was enacted. (Poor Law, §§ 2, 9, 10, 11, 20, 138, 139.) Under that law, hereinafter referred to by section numbers, there also were two systems: (1) a system of divided responsibility between the towns and the county, the towns being required to pay for the support of the town poor (§ 10), and the county being required to pay for the support of the county poor (§ 11; *Town of Islip* v. *County of Suffolk*, 191 App. Div. 284), each class being defined in the statute; and (2) a system of complete responsibility upon the county for both classes. But the board of supervisors was expressly authorized to abolish the distinction between town and county poor and to assume complete control of both classes, and if the board exercised this right, then the cost of maintaining the poor was made a charge upon the county and the amount thereof was required to be " assessed, levied and collected the same as other county charges." (§ 138.)

Other provisions of the Public Welfare Law (§§ 45, 47,█ 49,█ subds. 4, 5) relating to the financing of relief by towns, cities and counties, show that the moneys spent by the county to pay county charges for relief are required to be raised by the ordinary method of taxation.

Nor can the county find any justification for the " charge back " in chapter 259 of the Laws of 1933, amending section 10 of the Temporary Emergency Relief Act. This statute, as amended, after providing that the legislative body of a county, city or town may appropriate and make available sufficient money to pay for

work relief and home relief, and also may raise the money during the emergency period by interest-bearing certificates, reads as follows: "In any county the board of supervisors in making any appropriation for home and for work relief for the county welfare district may provide that such appropriation or certificates issued therefor, together with interest thereon shall be a charge against the county but the amount of such appropriation or certificates issued therefor, together with interest thereon shall be reimbursed to the county from the taxable property within the county public welfare district for whose benefit said appropriation was made or said certificates issued as provided by this act and the board of supervisors of said county shall levy a tax upon the taxable property within the county public welfare district sufficient to provide such sums as may be necessary to meet such appropriation or certificates issued therefor, together with the interest thereon." (§ 10.)

The county, to reimburse itself, is thus required to levy a tax upon the taxable property within the county public welfare district, for whose benefit the money has been appropriated. The argument is made on behalf of the county that if the money is appropriated for or spent in any particular town, then that town has received the benefit and under the statute the county may reimburse itself by levying a tax upon such town for the full amount spent therein. I do not think so. Each city in the State and the territory of each county beyond the limits of the cities is a separate public welfare district. (Temporary Emergency Relief Act, § 6.) Here the county of Suffolk, by the resolution of October 26, 1936, undertook to administer all relief and to make the expense thereof a charge upon the county. The money it spent must have come from its general relief appropriations; at least there is nothing to indicate the contrary. Such appropriations undoubtedly were made to cover the county, or rather the county public welfare district at large. The entire county or district received the benefit of such appropriation. Therefore, under the statute the county must seek reimbursement by levying a tax upon all the taxable property in the county.

The confusion in the interpretation of this amendment (Laws of 1933, chap. 259) arises from the failure to appreciate that a county public welfare district does not always embrace the entire county. Under the Public Welfare Law several large cities are constituted city public welfare districts and under the Temporary Emergency Relief Act every city is constituted a public welfare district. Therefore, when the amending statute (Laws of 1933, chap. 259) provided that reimbursement should be had by levying a tax upon the real property within the public welfare district for whose benefit the relief moneys had been appropriated, the intention undoubtedly

was to exclude merely the cities within a county, which are separate welfare districts.

As there is no authority for the "charge back," the resolutions and the tax warrant with respect to the three items complained of would have to be declared void and the judgment affirmed, were it not for the fact that after the judgment was entered and while this appeal was pending, the Legislature enacted a statute (Laws of 1939, chap. 572) for the express purpose of validating, for the limited period from November 1, 1936, to October 31, 1939, the resolution of October 26, 1936 ("relating to the responsibility for the cost and administration of the care of needy persons" in Suffolk county), and all acts done and proceedings taken pursuant thereto, notwithstanding any defect, irregularity or omission therein or the lack of statutory authority therefor. This court must take heed of the new statute. If, during the pendency of an appeal, the Legislature enacts a new law applicable to the question at issue, the appellate court will dispose of the judgment upon the basis of the new enactment. (*People ex rel. Clark* v. *Gilchrist*, 243 N. Y. 173, 179, 180.)

However, plaintiffs urge that the new enactment is also invalid because it contravenes, among others, the following provisions of the Constitution of the State of New York: (a) Section 15 of article 3, which states that "No private or local bill, which may be passed by the Legislature, shall embrace more than one subject, and that shall be expressed in the title;" (b) section 6 of article 1, which provides, among other things, that no person shall be deprived of his property without due process of law.

As to the first constitutional objection: The bill here may fairly be said to satisfy the requirements of section 15 of article 3. Only one subject is embraced — the validation of the resolution of October 26, 1936, relating to the administration and the cost of relief in Suffolk county and of all acts and proceedings pursuant thereto for the limited period of time stated, despite any defect, irregularity or omission in the resolution or in the acts and prot ceedings, or the lack of statutory authority therefor. This subjec- is adequately expressed in the title of the act. While the act makes no specific mention of the "charge back," it is definitely within the intent and language of the act as expressed both in the title and in the body. The intent of the act is clear: For the limited period mentioned, to make valid, despite the absence of statutory authority and defects of every other kind, the resolution of the board of supervisors dated October 26, 1936, relating to the administra- tion and cost of relief in Suffolk county, and every act done pursuant to such resolution. The "charge back" "may be easily and

reasonably grouped within the scope and range of the general subject expressed." (*W. I. B. Co.* v. *Town of Attica*, 119 N. Y. 204, 210.)

As to the second objection, namely, that the act violates the due process clause (State Const. art. 1, § 6), plaintiffs rely on the rule that after the entry of a judgment establishing their rights the Legislature may not enact a statute which has the effect of divesting them of the rights thus established. (*Matter of Greene*, 166 N. Y. 485, 492; *Raphael* v. *Goldman Furniture Co., Inc.*, 246 App. Div. 548 [2d Dept.].) This rule may not be invoked here. The declaratory judgment in the case at bar does not have the effect of vesting or establishing property rights in any individual. Indeed, plaintiffs are proceeding as taxpayers to establish a public right and not to obtain any private right or property. The rule that private rights which have become vested by the entry of the judgment may not be divested by subsequent legislation " does not apply to a suit brought for the enforcement of a public right, which, even after it has been established by the judgment of the court, may be annulled by subsequent legislation and should not be thereafter enforced." (*Hodges* v. *Snyder*, 261 U. S. 600, 603.) There is a definite distinction between the effect to be given to a retroactive statute when it relates to private rights and when it relates to public rights. (*Graham & Foster* v. *Goodcell*, 282 U. S. 409, 429, 430; *Swayne & Hoyt, Ltd.*, v. *United States*, 300 id. 297, 301, 302; *Commissioner of Internal Revenue* v. *Northern Coal Co.*, 62 F. [2d] 742, 746.)

To correct errors in the administration and application of the law, a judgment establishing public rights may always be avoided or circumvented by later legislative enactments. In other words, the legislative body may confirm and ratify any governmental act which was done without authority, provided only that the Legislature had authority originally to authorize the performance of such an act. (*Smith* v. *City of Brooklyn*, 32 App. Div. 223 [2d Dept.].) Or, to put it differently, " ' the Legislature may validate, retrospectively, any proceedings which they might have authorized in advance.' " (*People ex rel. Am. Ex. Nat. Bank* v. *Purdy*, 196 N. Y. 270, 282.)

Plaintiffs also rely on the rule that while mere defects or irregularities in the mode or manner of doing some act may be cured by statute, nevertheless, jurisdictional defects may not be thus cured. (*Olds* v. *City of Jamestown*, 280 N. Y. 281, 285; *Dunkum* v. *Maceck Building Corporation*, 227 App. Div. 230, 239, 240 [2d Dept.]; affd., 256 N. Y. 275; *Cromwell* v. *MacLean*, 123 id. 474, 490, 491; *Hopkins* v. *Mason*, 42 How. Pr. 115, 119, 120.) Plaintiffs overlook, however, that this line of cases is applicable only when the purpose or

effect of subsequent legislation is to deprive any person of a specific title or of specific property which he lawfully acquired. Here the new statute affects neither titles nor property rights of any particular persons. As pointed out, it necessarily had the effect of changing the administration of relief by permitting the county to charge back to the several towns the moneys it expended on behalf of the inhabitants of the towns. It is valid because " It was nothing but the validating of a tax. It was in no manner an interference with titles." (*Cromwell* v. *MacLean*, 123 N. Y. 474, 494.)

This statute is comparable to statutes which affect a reapportionment of taxes, or increase the taxes, or change the method of taxation. The Legislature may make any change in its policy of taxation that it sees fit and the change may operate prospectively or retrospectively because " The methods and subjects of taxation are matters of governmental policy." (*People ex rel. Clark* v. *Gilchrist*, 243 N. Y. 173, 185.) Likewise the subject and methods of relief are matters of governmental policy which the Legislature may change at will. (*United States* v. *Heinszen & Co.*, 206 U. S. 370, 382.)

However, there is no need to dwell upon the nature of the rights established by the judgment in the case at bar or upon the distinction between the effect of a retroactive statute when it relates to private rights and when it relates to public rights. A judgment, whether it relates to public or private rights, does not create a vested interest while an appeal therefrom is still pending. (*Germania Savings Bank* v. *Suspension Bridge*, 159 N. Y. 362, 368.)

The judgment declaring void the resolution dated September 24, 1934, the resolution dated October 26, 1936, and three certain items relating to home relief, work relief and hospitalization in the tax warrant dated November 29, 1937, should be modified by declaring valid the resolution dated October 26, 1936, and the tax warrant dated November 29, 1937, in so far as it relates to said items of home relief, work relief and hospitalization, and, as thus modified, the judgment should be affirmed, without costs.

Present — LAZANSKY, P. J., CARSWELL, JOHNSTON, ADEL and TAYLOR, JJ.

Judgment declaring void the resolution dated September 24, 1934, the resolution dated October 26, 1936, and three certain items relating to home relief, work relief and hospitalization in the tax warrant dated November 29, 1937, modified by declaring valid the resolution dated October 26, 1936, and the tax warrant dated November 29, 1937, in so far as it relates to said items of work relief, home relief and hospitalization, and, as thus modified, the judgment is unanimously affirmed, without costs.